ADEEB HADDAD and BUTROS D. HADDAD, Doing Business as Copartners under the Firm Name of HADDAD BROTHERS, Plaintiffs, *v.* SOUTHERN PACIFIC COMPANY, Defendant.

First Department, December 13, 1918.

Carriers — Cummins Amendment to Interstate Commerce Act construed — inferences of fact not permitted upon submission of controversy — presumption of knowledge by shipper that rates were based on value — liability of carrier for value of goods destroyed by fire where shipper concealed true character of goods in order to obtain lower rate.

A statement in a submission of a controversy in an action for the loss of goods alleged to have been destroyed by fire that the cause of loss is unknown does not render the " Cummins Amendment " to the Interstate Commerce Act inapplicable so as to give the defendant carrier a common-law right to limit its liability by contract, where it is not agreed as a fact that the loss was not caused by the defendant or a connecting carrier.

Upon the submission of a controversy the court is not permitted to draw inferences of fact; the facts must be stated and agreed upon.

Even though a shipper had no actual knowledge that rates were based on value such knowledge will be presumed from the terms of the bill of lading and of the published schedules filed with the Interstate Commerce Commission.

Under the Cummins Amendment to the Interstate Commerce Act if a common carrier had no knowledge of the " character of the goods " shipped its liability is limited to the declared value.

The fact that a carrier was told that a shipment consisted of rugs gave it no knowledge of the shipment's " character," within the meaning of the Cummins Amendment, where it appears that oriental rugs of considerable value were included, and that the contents of the cases and bales were hidden from view by the boxing or wrapping.

An opinion of the Interstate Commerce Commission is entitled to weight in construing the Interstate Commerce Act.

Where a shipper has concealed from the carrier, in order to take advantage of a lower rate, the true character of the goods shipped it is not permitted under the Cummins Amendment to recover beyond the value stated to the carrier as a basis for the rate obtained.

Where a shipper of rugs stated that each rug did not exceed a specified amount in value he is not entitled to recover an *average* value.

SUBMISSION of a controversy upon an agreed statement of facts pursuant to section 1279 of the Code of Civil Procedure.

*David W. Kahn* of counsel [*Myles A. Walsh* with him on the brief; *Rosenberg, Levis & Ball*, attorneys], for the plaintiffs.

*Gordon M. Buck*, for the defendant.

SHEARN, J.:

The plaintiffs claim the full value of four cases and two bales of oriental rugs shipped to them at New York in October, 1915, from San Francisco, Cal., and destroyed by fire *en route*. The cause of the fire is not known. The tariff rates for shipment of rugs " were dependent upon the value of the property shipped, as stated in writing by the shipper." The tariff further provided that a shipment of rugs would not be accepted by the defendant railroad company if the shipper declined to declare their value. These rates " were established and maintained by the Interstate Commerce Commission."

The shipper undervalued the rugs, and thus obtained the lesser rate applicable to such lower valuation. The defendant had no knowledge of the contents of the cases and bales comprising the shipment, except that it was advised that they contained rugs. Nor did the defendant have any knowledge of their value, except that the shipper declared in writing on the bills of lading that the value of the rugs in the four cases did not " exceed $100 each," and in the two bales did not " exceed $50 each." The contents of the cases and bales were hidden from view by the boxing or wrapping.

The defendant has paid to the plaintiffs the actual invoice value of each of the rugs comprised in this shipment, except where such value exceeded the declared value and in that

case the declared value has been paid. The plaintiffs, however, now seek to ignore the declared value of the shipment, by means of which they have obtained reduced freight rates and to recover the full invoice value of the rugs. The amount paid by the defendant to the plaintiffs is $5,872.65, and the full invoice value of the rugs is $10,680.02. The plaintiffs claim the right to recover the difference between these sums, or $4,807.37; or in the alternative the plaintiffs seek a recovery based on a value of $100 for each of the rugs in the four cases and of $50 for each of the rugs in the two bales, regardless of the fact that a large number of the rugs in the four cases were worth less than $100 each, and that the two bales contained a number of rugs worth less than $50 each.

In 1906 Congress enacted the so-called " Carmack Amendment " to the Interstate Commerce Act, making the initial carrier of an interstate shipment liable to the holder of the bill of lading therefor for any loss, damage or injury to such shipment " caused by it " or by any connecting carrier, and declared that no contract, receipt, rule or regulation should exempt such carrier from the liability thus imposed. (24 U. S. Stat. at Large, 386, § 20, as amd. by 34 id. 593, 595, § 7; 34 id. 838, Res. No. 47.) There was no prohibition against exemption from loss, damage or injuries not caused by the carriers. This amendment was considered in the leading case of *Adams Express Co.* v. *Croninger* (226 U. S. 491). In that case the court said, with regard to the liability imposed upon the initial carrier: " The suggestion that an absolute liability exists for every loss, damage or injury, from any and every cause, would be to make such a carrier an absolute insurer and liable for unavoidable loss or damage though due to uncontrollable forces: That this was the intent of Congress is not conceivable. To give such emphasis to the words ' any loss or damage,' would be to ignore the qualifying words ' caused by it.' The liability thus imposed is limited to ' any loss, injury or damage caused by it or a succeeding carrier to whom the property may be delivered,' and plainly implies a liability for some default in its common law duty as a common carrier." (pp. 506, 507.)

The opinion then stated that it was " an established rule of the common law as declared by this court in many cases

that such a carrier may by a fair, open, just and reasonable agreement limit the amount recoverable ·by a shipper in case of loss or damage to an agreed value made for the purpose of obtaining the lower of two or more rates of charges proportioned to the amount of the risk;" that this was not contrary to public policy; and that it did not exempt the carrier from negligence, as the carrier was bound to respond in that value for negligence. The opinion then continued with reference to the " Carmack Amendment:" " The statutory liability, aside from responsibility for the default of a connecting carrier in the route, is not beyond the liability imposed by the common law as that body of law applicable to carriers has been interpreted by this court as well as many courts of the States." (p. 511.)

Further, the court said that it is not " conformable to plain principles of justice that a shipper may understate the value of his property for the purpose of reducing the rate, and then recover a larger value in case of loss; " and that " a limitation based upon an agreed value for the purpose of adjusting the rate " does not " conflict with any sound principle of public policy." (p. 510.)

On March 4, 1915, following immediately upon the decision of the Supreme Court of the United States in *Adams Express Co.* v. *Croninger* (*supra*), the " Carmack Amendment " was revised by the so-called " Cummins Amendment," which is the statute under which this case arises. This amendment in imposing liability upon the initial carrier for any loss, damage or injury to property received by it for transportation, retained the words " caused by it " or by any connecting carrier, and provided for the payment of the full actual loss notwithstanding any limitation of liability in the bill of lading or otherwise, but with this important proviso: " That if the goods are hidden from view by .wrapping, boxing, or other means, and the carrier is not notified as to the character of the goods, the carrier may require the shipper to specifically state in writing the value of the goods, and the carrier shall not be liable beyond the amount so specifically stated, in which case the Interstate Commerce Commission may establish and maintain rates for transportation, dependent upon the value of the property shipped as specifically stated in writing by

the shipper." (38 U. S. Stat. at Large, 1196, 1197, chap. 176.) This amendment took effect ninety days after its passage.*

The briefs contain an elaborate and forceful discussion of the carrier's right to limit liability in a case where the loss was not caused by it or by any of its connecting carriers, and the defendant contends that because the agreed facts state that the cause of loss is unknown, it should be held that the " Cummins Amendment " is inapplicable and that the defendant had a common-law right to limit its liability by contract. We cannot so decide, because it is not agreed as a fact that the loss was not caused by the defendant or a connecting carrier. If, in view of the fact that the goods were delivered to the carrier in good condition and were destroyed while in the possession of the carrier and under the circumstances disclosed, we should apply the rule of *res ipsa loquitur,* an inference would arise that the loss was caused by the carrier; but on a submitted controversy we are not permitted to draw inferences of fact; the facts must be stated and agreed upon. We, therefore, do not decide this point. However, as we are of the opinion that, even if the loss was caused by the carrier and if, therefore, the " Cummins Amendment " was applicable, the plaintiffs should not recover, we shall not dismiss the controversy.

In this case rates covering the shipment of rugs had been duly established and maintained by the Interstate Commerce Commission, and the shipment moved under those rates. Even if the shipper had not had actual knowledge that the rates were based on value, such knowledge would have been " presumed from the terms of the bill of lading and of the published schedules filed with the Interstate Commerce Commission, and the effect of so filing the schedules makes the published rates binding upon shipper and carrier alike." (*Boston & Maine Railroad* v. *Hooker,* 233 U. S. 97, 98.) The rugs which the shipper declared worth " not to exceed $50 each " moved at the first class rate, and those declared to be worth " not to exceed $100 each " moved at a rate equal to one and one-half times the first class rate. In other words, by declaring a value less than the invoice value, the shipper

---

* Since amd. by 39 U. S. Stat. at Large, 441, 442, chap. 301.—[REP.

secured a reduced rate, and it has been held that under such circumstances he cannot "recover a larger amount as the true value; it would encourage undervaluations and result in illegal preferences and discriminations." (*Kansas Southern Railway* v. *Carl*, 227 U. S. 639.) The "Carmack Amendment" has been construed by the Supreme Court of the United States not to forbid a carrier to establish rates dependent upon the declared value of a shipment. (*Adams Express Co.* v. *Croninger, supra.*) The "Cummins Amendment" sanctions the same practice in the proviso above quoted. If the defendant had no knowledge of the "character of the goods" shipped, the defendant's liability is unquestionably limited to the declared value. Whether or not the defendant had knowledge turns upon the proper construction of the word "character" appearing in the proviso of the "Cummins Amendment." The plaintiffs contend that, having been informed that the shipment consisted of rugs, the defendant cannot claim to have had no knowledge of the shipment's character. We agree with the argument of defendant's counsel that this construction is too narrow and would render the proviso inoperative; for the defendant must *in every case*, in order to apply *any* rate thereto, receive information as to the class to which a shipment belongs, that is, the general nature of the commodity "hidden from view by wrapping, boxing, or other means." The fact that the defendant was told that the shipment consisted of rugs gave it no knowledge that it consisted of oriental rugs, or that a number of the rugs were actually worth more than $400 each, and, therefore, there was withheld from the defendant knowledge essential in order to apply the tariff rate. This question has been carefully considered by the Interstate Commerce Commission in a proceeding entitled *Matter of Cummins Amendment* (33 I. C. C. 682), and the commission has held that the word "character" related primarily to value. The opinion "is a practical interpretation of the law by the administrative body having its enforcement in charge, and is entitled to weight in construing the act." (*Boston & Maine Railroad* v. *Hooker, supra*, 118.) The shipper having concealed from the carrier, in order to take advantage of a lower rate, the true character of the goods, is not permitted, under the "Cummins Amend-

ment," to recover beyond the value stated to the carrier as a basis for the rate obtained.

The plaintiffs ask that in the event their construction of the act is not adopted, then they be allowed to recover an *average* value of $100 and $50 respectively for the rugs contained in the cases and bales comprising the shipment. The plaintiffs did not declare the value as an average value of not to exceed so much, but plainly stated that each ·rug in the shipment did not exceed a specified amount, and they should not recover a different value from that asserted at the time the shipment was made, by means of which a reduced rate was obtained.

The defendant has paid to the plaintiffs the full value of the rugs as declared at the time of shipment and has discharged its entire liability. Accordingly, judgment is directed in favor of the defendant, with costs.

CLARKE, P. J., LAUGHLIN, DOWLING and SMITH, JJ., concurred.

Judgment directed in favor of defendant, with costs. Order to be settled on notice.