HUDSON HANDKERCHIEF MANUFACTURING CORP., Respondent, *v.* PORTO RICAN EXPRESS COMPANY, Appellant.

First Department, December 20, 1948.

*Frank L. Ippolito* of counsel (*Joseph Walker Magrauth* with him on the brief; *Frank L. Ippolito,* attorney), for appellant.

*Benjamin L. Tell* of counsel (*Solomon M. Cheser* with him on the brief; *Tell, Cheser, Werner & Breitbart,* attorneys), for respondent.

SHIENTAG, J. The defendant, a common carrier by motor vehicle, appeals from an order granting summary judgment to the plaintiff, a shipper in Puerto Rico, with an assessment of damages for the full value of a package containing merchandise. This package was delivered by the plaintiff to the defendant in Puerto Rico for shipment to a designated consignee in New York City.

When the merchandise was delivered to the defendant in Puerto Rico, the latter gave the shipper a receipt whereby it undertook to deliver the package to the consignee at a specified address in New York City, with charges to be collected in New York. The receipt provided for a limited liability of $50 unless a higher value was declared and a higher tariff paid. No such declaration was made and no higher valuation was placed on the shipment.

It appears from the affidavits, and this will have to be more fully developed upon the trial, that after defendant picks up the merchandise in Puerto Rico, it turns it over to a steamship line to be transported from Puerto Rico to New York. The defendant makes the arrangement for such transportation by water. The shipper does nothing about it. In fact, so far as appears from the affidavits, he does not know how the merchandise is handled after he delivers it to the defendant motor vehicle carrier. All he knows is that he has received from the defendant what may be characterized as a " through shipping receipt " for merchandise delivered to the defendant in Puerto Rico for delivery by the defendant to the consignee in New York City. The defendant obtains a bill of lading from the steamship company in its own name and, so far as appears, assumes the payment of the steamship company's normal tariff charges. When the merchandise arrives in New York it is picked up by the defendant and delivered by it to the consignee. That procedure apparently was followed in this case. But while the package was on the defendant's motor vehicle in New York City it disappeared and was never delivered.

Assuming that the loss was caused by the defendant and that the procedure in connection with the transportation of merchandise was substantially as above set forth, the important question presented is whether the limitation of liability to $50 is valid and enforcible. That depends upon the applicability of a number of provisions of the Intertsate Commerce Act. The plaintiff contends that the limitation of liability in the defendant's express receipt is invalid under Federal law because the defendant has not obtained from the Interstate Commerce Commission an order permitting it to limit its liability in writing based on a schedule of rates filed with and approved by the commission, as required by subdivision (11) of section 20 of Part I of the Interstate Commerce Act (U. S. Code, tit. 49). The defendant-appellant contends (1) that the shipment is not one in interstate commerce; (2) that in any event Part II of the Interstate Commerce Act, dealing with Motor Vehicle Carriers, is not applicable to the business carried on by it and to the shipment here involved; (3) that therefore it was unnecessary, in order to limit liability for loss, to file schedules of rates with the Interstate Commerce Commission and obtain its approval thereof; and (4) that it must be shown that the loss was " caused by " the defendant.

We disagree with the contention of the appellant that in no event was the shipment one in interstate commerce and that

its business, as it was being conducted, was not in interstate commerce. The contention is made by the defendant that, because the steamship company made its regular charge and issued a bill of lading to the defendant for the ocean voyage this was not an interstate shipment. A similar contention was made in *Baer Bros*. v. *Denver & Rio Grande R. R. Co*. (233 U. S. 479, 490–491) and rejected by the Supreme Court of the United States, which said: '' But while there was no through-rate and no through-route there was in fact, a through shipment from St. Louis, Missouri, to Leadville, Colorado. Its interstate character could not be destroyed by ignoring the points of origin and destination, separating the rate into its component parts and by charging local rates and issuing local waybills, attempting to convert an interstate shipment into intrastate transportation. * * * This common arrangement does not depend upon the establishment of a through-route or the issue and recognition of a through bill of lading, but may be otherwise manifested.''

In *United States* v. *Munson S. S. Line* (283 U. S. 43) the freight was bound from Maryland for ultimate destination in Florida, but it reached there not by virtue of any common arrangement between the carriers but by virtue of contracts made by the shipper with each carrier separately. (See opinion of the Circuit Court of Appeals in 37 F. 2d 681, 687.) Here, while no through bill of lading was given, there was what has been characterized as a through shipping receipt. The shipper had nothing to do with any separate arrangement with the carrier by water. It dealt solely with the motor vehicle carrier in Puerto Rico and left it to the latter to determine the ways and means by which the shipment was to be transported to the United States. In other words, there was more than continuity of transportation. There was a common arrangement between the defendant and the steamship company whereby the continuity of transportation was accomplished. (See *Standard Oil Co. of N. Y.* v. *United States,* 179 F. 614, 621, certiorari denied 218 U. S. 681.)

By the concession of the parties, the defendant is not to be deemed a '' freight forwarder '' and is not subject to Part IV of the Interstate Commerce Act. Furthermore, the defendant is not the type of common carrier coming under Part I of the Interstate Commerce Act.

Part I of the Act by its terms applies, so far as is here pertinent, to transportation of passengers or property wholly by railroad, or partly by railroad and partly by water when both are used under a common control, management, or arrangement

for a continuous carriage or shipment (§ 1, subd. [1], par. [a]). The term " common carrier " as used in Part I specifically includes " express companies " (§ 1, subd. [3], par. [a]), but since the enactment of Part II the term " express companies " referred to in Part I must be limited to cover only those activities of such companies which involve transport by railroad and do not include motor vehicle transportation, which is specifically covered under Part II of the Interstate Commerce Act. Part I of the act, so far as here pertinent, defines interstate commerce as " transportation　*　*　* From one State or Territory of the United States or the District of Columbia, to any other State or Territory of the United States, or the District of Columbia,　*　*　*." (§ 1, subd. [1], par. [b].)

Under subdivision (11) of section 20 (the Carmack Amendment), which is found in Part I of the Interstate Commerce Act and was enacted in 1906, it was provided in substance that no common carrier subject to the provisions of Part I could limit its liability, although it offered a choice of rates based on valuation unless it filed its schedules with the Interstate Commerce Commission and obtained its approval.

Part II of the Interstate Commerce Act became law in 1935 (49 U. S. Stat. 543 *et seq.*) and regulated operations by motor carriers. The term " common carrier by motor vehicle " excludes the type of express company covered by Part I of the Interstate Commerce Act, and of course specifically includes the type of carrier by motor vehicle here involved (U. S. Code, tit. 49, § 303, subd. [a], pars. [13, 14]). Part II of the Act defines interstate commerce as " commerce between any place in a State and any place in another State, whether such commerce moves wholly by motor vehicle or partly by motor vehicle and partly by rail, express, or water." (U. S. Code, tit. 49, § 303, subd. [a], par. [10].) In Part II, moreover, the term " State " is defined as meaning " any of the several States and the District of Columbia." (U. S. Code, tit. 49, § 303, subd. [a], par. [8].) It will be noted that, whereas Part I covers shipments between territories and/or States of the United States, Part II is limited to shipments between States and specifically omits territories.

In 1935, the so-called Carmack Amendment was specifically made applicable to Part II by section 219 thereof (as amd.), which reads as follows (U. S. Code, tit. 49, § 319; as added by 49 U. S. Stat. 563, as amd. by 56 U. S. Stat. 300, 746): " The provisions of section 20 (11) and (12) of part I of this Act, together with such other provisions of such part (including

penalties) as may be necessary for the enforcement of such provisions, shall apply with respect to common carriers by motor vehicle with like force and effect as in the case of those persons to which such provisions are specifically applicable.''

The claim is made that by incorporating the provisions of the Carmack Amendment, which is in Part I, and making it applicable to Part II of the Interstate Commerce Act, there was thereby incorporated in Part II, so far as limitation of liability is concerned, the broader definition in Part I of interstate commerce, namely, shipments to or from territories as well as shipments to or from States. We find no basis for concluding that by making the provisions of the Carmack Amendment applicable to Part II the Congress thereby intended to enlarge the definition of interstate commerce which is contained in Part II. (Cf. *Matter of Stangler,* 27 M. C. C. 463.) It does not appear why there is a different definition of interstate commerce in the two parts of the Interstate Commerce Act. The Congress may have had some reason for the distinction, but at any rate it is there, and we do not see how it can be changed by this court under the guise of judicial interpretation. There has been ample opportunity for the Congress, by appropriate amendment, to eliminate the distinction if it had desired to do so.

Since the provisions of subdivision (11) of section 20 of Part I of the Interstate Commerce Act, as incorporated in Part II thereof by section 319 of that Part, have on the face of the affidavits, at any rate, no application to the shipment here involved, the limitation of liability must be deemed valid. (*Kilthau* v. *International Mercantile Marine Co.,* 245 N. Y. 361; *Boyle* v. *Bush Terminal R. R. Co.,* 210 N. Y. 389; *Glanzer* v. *Cunard S. S. Co.,* 214 App. Div. 473.) Moreover, before any liability can be imposed on the defendant it must be shown that the loss of the shipment was '' caused by '' the defendant. (*Haddad* v. *Southern Pac. Co.,* 185 App. Div. 500, 502.)

The determination of the Appellate Term and the order of the City Court, therefore, should be reversed, with costs to the appellant in all courts and the motion denied.

DORE, J. (concurring in result). Whether defendant controlled the shipment and whether it was made pursuant to what is called '' a common arrangement '' should not be passed upon before full development of all the facts at a trial including proof of whether the arrangement with the ocean carrier herein is the usual and customary arrangement by agreement between the defendant and the ocean carrier. Until all the facts are fully

developed, issues relating to application of the Interstate Commerce Act should not, I think, be ruled on in advance. The pertinence of various parts of the act and the rules of law applicable thereunder will depend on the precise state of facts established after a plenary trial.

Accordingly, I agree that summary judgment should not be granted, but for the reasons stated I concur only in the result reversing the order and denying the motion.

GLENNON, J. P., COHN and CALLAHAN, JJ., concur with SHIENTAG, J.; DORE, J., concurs in result in opinion

Determination of the Appellate Term and the order of the City Court reversed, with costs to the appellant in all courts and the motion denied. [See *post,* p. 1055.]