M. & T. TRUST COMPANY, Respondent, *v.* EXPORT
STEAMSHIP CORPORATION, Appellant.

(Argued April 13, 1933; decided May 23, 1933.)

*Lyman M. Bass* and *Herbert K. Stockton* for appellant.

*Ray M. Stanley, Ellis H. Gidley* and *Arthur E. Otten* for respondent.

CROUCH, J.   The action is in conversion to recover the value of six separate shipments of motor trucks and parts carried by defendant and delivered at destination to an

unauthorized person without surrender of the outstanding order bills of lading.

The shipments were from Buffalo, N. Y., to ports in Morocco, and were consigned to the order of the shipper, notify X. Drafts for their value, drawn by the shipper upon X payable to the plaintiff, to which were attached the bills of lading indorsed in blank by the shipper, were delivered to the plaintiff and by it forwarded to its Morocco correspondent for collection. They were presented to X for acceptance but none was accepted. Nevertheless, the defendant delivered the shipments to X against a bank guaranty for its own protection.

The bills of lading provided, among other things, that in case of failure to make delivery, notice of loss in writing must be given to the defendant within a specified time after delivery should have been made; that written claims must be filed within a specified time after giving the aforesaid notice; that unless the notice be so given and the claim be so filed, defendant should not be liable; and that no suit for loss should be maintained unless instituted within one year after giving the written notice. There is no question here as to the reasonableness of the time limitations, nor as to the fact that none of the above provisions was complied with.

Such non-compliance constitutes defendant's answer to plaintiff's claim. The question is whether or not that answer is good in point of law.

Plaintiff says it brings the action on the theory that the contracts of carriage and the ensuing transportation were wholly controlled by the general maritime law, under which defendant's essential obligation was safely to carry and rightly deliver the shipments; that the willful misdelivery breached that obligation and constituted a conversion, thereby estopping defendant from claiming any benefit from the notice clauses and rendering it liable to plaintiff, as in tort.

It has been said that to denounce an act of an ocean

carrier as conversion is, in the admiralty, " only calling bad names." (HOUGH, J., *The Cabo Villano*, 18 Fed. Rep. [2d] 220.) If there is any inconsistency here in suing in trover under the principles of the maritime law, it may be disregarded. There is no dispute as to what defendant did in respect to the shipments. They were misdelivered. Unless defendant may take advantage of the notice clauses in the contracts, there can be no doubt that it is liable as for a conversion.

Within the limits prescribed by legislation and public policy, maritime contracts of carriage may, like any other, include provisions excepting certain risks or limiting and defining the relations of the parties. (*Tewes* v. *North German Lloyd S. S. Co.*, 186 N. Y. 151; *Queen of the Pacific*, 180 U. S. 49.)

It is conceded that there is no legislation regulating or forbidding the notice clauses here in question, nor are they opposed to public policy. (*Georgia, F. & A. Ry. Co.* v. *Blish Milling Co.*, 241 U. S. 190.) The time limitations being reasonable, the clauses are valid generally. (*Cudahy Packing Co.* v. *Munson S. S. Line*, 22 Fed. Rep. [2d] 898; certiorari denied, 277 U. S. 586; *Schnell* v. *United States*, 30 Fed. Rep. [2d] 676; certiorari denied, 279 U. S. 858.)

We come then directly to the point of whether misdelivery is covered by the notice clauses in question, and if so, whether defendant may have the benefit of them.

The bills of lading under which the shipments were made were issued pursuant to certain Federal statutes. (The Harter Act, 27 U. S. Stat. 445; 46 U. S. Code, § 190; The Bill of Lading Act, 39 U. S. Stat. 538; 49 U. S. Code, § 81.) Their proper construction is a Federal question. (*Chesapeake & O. Ry. Co.* v. *Martin*, 283 U. S. 209, 213.) A misdelivery such as this has been held to come within the description of " failure to make delivery " in bills of lading issued pursuant to the Interstate Commerce Act. (*Georgia, F. & A. Ry. Co.* v. *Blish Milling Co.*, *supra.*) We see no reason why the same construction

should not be given to the same words here. The Bill of Lading Act is equally applicable to railroad and ocean bills of lading. Similar clauses in bills issued under it should be given the same meaning. Even so, it is urged that where an ocean carrier commits a breach that goes to the essence of the contract of affreightment, it may not invoke the provisions of the contract favorable to it. The misdelivery here is said to have been such a breach. The cases cited in support of this rule, among which *The Sarnia* (278 Fed. Rep. 459) and *St. Johns N. F. Shipping Corp.* v. *S. A. Companhia Geral, etc.* (263 U. S. 119) are typical, all rest upon the doctrine of deviation. In *Bank of California N. A.* v. *International Mercantile Marine Co.* (64 Fed. Rep. [2d] 97) the Circuit Court of Appeals for the Second Circuit refused to apply that doctrine to a case of misdelivery, factually similar to the one here. In doing so, reliance was had upon certain decisions of the Supreme Court in cases arising under the Interstate Commerce Act. (*Georgia, F. & A. Ry. Co.* v. *Blish Milling Co., supra; American Ry. Express Co.* v. *Levee,* 263 U. S. 19; *Davis* v. *Roper Lumber Co.,* 269 U. S. 158; *Chesapeake & O. Ry. Co.* v. *Martin, supra.*) It is the contention of the plaintiff — and such was the view of the Appellate Division — that those decisions rest upon the policy underlying the Carmack Amendment (34 U. S. Stat. 593, as amd., 49 U. S. Code, § 20, subd. 11), and that their authority is confined to cases arising under the Interstate Commerce Act. It is quite true that the argument made by the shipper in the *Blish Milling Co.* case, to the effect that the misdelivery amounted to conversion and thus to abandonment of the contract (Cf. *Magnin* v. *Dinsmore,* 62 N. Y. 35, 45; 70 N. Y. 410, 417), was answered by saying that neither party could waive the terms of the contract under which the shipment was made pursuant to the Federal act. The same argument is made by the plaintiff here. But while the policy of the Inter-

state Commerce Act requires such uniform treatment of claims, it does not follow that the converse is true, and that in cases not within the scope of interstate commerce distinctions based on circumstances of loss, form of action or the mode of carriage, should be fostered in the absence of some compelling reason for the distinction. No such reason is apparent. On the contrary, the opinion in the *Blish Milling Co.* case sets forth independent reasons why the limitation is valid, even where the action is laid in trover — the desirability of prompt notice and opportunity to investigate the merits of a claim before the evidence is cold. (See, also, *Barrett* v. *Van Pelt*, 268 U. S. 85.) Such considerations under modern shipping conditions apply no less to ocean than to land carriage.

The need for uniformity in effect as well as in construction of bills of lading, is obvious and persuasive. Both in legislation and in judicial decision the tendency has been toward uniformity. (Cf. *The Lake Galera*, 60 Fed. Rep. [2d] 876; *United States Navigation Co.* v. *Cunard S. S. Co.*, 284 U. S. 474; *South & Central American Commercial Co.* v. *Panama R. R. Co.*, 237 N. Y. 287.) In the absence of binding precedent to the contrary, we are disposed to follow tendency.

The judgment of the Appellate Division should be reversed and that of the Trial Term affirmed, with costs in this court and in the Appellate Division.

POUND, Ch. J., CRANE, LEHMAN, KELLOGG and O'BRIEN, JJ., concur; HUBBS, J., not sitting.

Judgment accordingly.