**A. F. MULLER**

v.

**LYKE COASTWISE LINE, Inc. et al.**

**Civ. A. 15, 16.**

United States District Court
S. D. Texas, Laredo Division.

Feb. 29, 1940.

Williams & Williams, San Antonio, Tex., for plaintiff.

Royston & Razor, Houston, Tex., for defendants.

ALLRED, District Judge.

Plaintiff sued defendants in two separate actions in the State district court of Webb County, Texas, for damages to shipments of onions. Upon petition for removal being filed by defendant Lykes Coastwide Line, Inc., the cases were duly removed to this court. Plaintiff now moves to remand to the State court.

Plaintiff's pleadings in the two causes in the State court are practically identical. In each cause he sues for $3,000 damages, the first (No. 12619 in State

court) for damages to thirteen car lots on a shipment made in May, 1936; the second (No. 12620 in State court), for damages to eight car lots, shipment made in April and May, 1938.

In both causes plaintiff alleges in substance:

That he made an oral agreement with the defendant Railway Company for the carriage by rail and steamship transportation from Laredo, Texas, to Boston, Massachusetts; that the defendant Railway Company promised and agreed to transport the goods from such shipping point to said destination. That plaintiff became liable to the Railway Company and any connecting carrier for the amount of lawful transportation charges in accordance with tariffs filed with the Interstate Commerce Commission. That after the oral agreement for through transportation was partially executed by the loading and acceptance and movement of such goods, or a part thereof, the defendant Railway Company made out a separate bill of lading for each of said car lots, reciting the receipt thereof from plaintiff as consignor consigned to Lykes Coastwise Line, Inc., at Corpus Christi, "for forwarding to A. F. Muller, Boston, Massachusetts."

That the Railway Company delivered the bills of lading to plaintiff's office without calling his attention to the fact of the variance or change with reference to the through carriage feature of said contract; that said goods were transported *under a common arrangement* between the defendants *for continuous carriage* in interstate commerce from Laredo to Boston. In the alternative, the "defendants were partners in said enterprise and carriage, as a joint undertaking, and their relationship and status therein toward plaintiff is a partnership."

That one of the defendants without authority from plaintiff thereafter prepared and caused to be sent to plaintiff a written original bill of lading dated at Corpus Christi, Texas, May 22, 1936, reciting receipt by defendant Steamship Company of the onions, consigned to plaintiff at Boston, Massachusetts, routed over its steamships; that plaintiff was not apprised of the existence and terms of such bill of lading until after the removal of the goods from Corpus Christi, Texas; that plaintiff did not execute or assent to such bill of lading, or authorize the same for part only of said through transportation; and for such reasons, and for various reasons alleged, said billing is ineffectual as limiting the liability of the defendants in said through carriage and has effect only as a receipt for the goods shipped and as such contracts of shipment as the law permits in such circumstances.

That the defendants at the time in question, severally, were in the open competitive field of onion shipping solicitation in the Laredo onion growing district, and generally solicited through shipments from Laredo to Boston and other distant Eastern markets; and that the intention of *both* parties to said oral agreement and, in the alternative the intention of plaintiff therein, was that the defendant Railway Company should undertake the through carriage of the above described shipment all the way to Boston by means of its own and its connecting carrier facilities; that the defendant Steamship Company had notice of plaintiff's purpose and desire for a continuous through carriage at the time of taking over the goods at Corpus Christi and undertaking and engaging to transport and deliver same to Boston; and that upon arrival at the final destination the defendant Steamship Company fixed the amount of charges to be paid under applicable tariffs, on the through carriage from Laredo, and collected the same from plaintiff's agent.

That by reason of the facts alleged, the separate bills of lading did not supersede the oral contract alleged and was not merged therein; that the defendant Railway Company was and is liable as initial carrier in the through carriage to Boston and defendant Steamship Company was and is responsive as delivering carrier as in a through shipment from Laredo, Texas, to Boston, Massachusetts; that in the event plaintiff is mistaken in his aver-

ment of said oral contract, or the applicability thereof, he "is entitled to the benefits of said written bills of lading and the defendants are liable under the terms and meaning thereof; and that the same comprise an *arrangement and contract* as to each car lot shipment *for continuous carriage* in interstate commerce from Laredo to Boston.

In the alternative, plaintiff alleged:

That if he is mistaken in the preceding allegations, "then the defendants are liable, *severally*, for such loss and damage as may have been occasioned in said shipments on the line of each, and that of its particular connecting carrier, and the plaintiff is unable to allege on whose line the same occurred." (Italics supplied.)

That "the defendant Railway Company acted in said carriage as the initial and receiving carrier for the entire journey, and its liability to the plaintiff is that of such initial carrier, *under the Federal Act to Regulate Commerce*, complete and without reference to that of its connecting carriers therein." (Italics supplied.)

That, *in the alternative*, the defendant Railway Company is liable as such for the safe carriage to and delivery at Corpus Christi in *intrastate commerce;* that "by the acceptance of said shipment and entering upon said contracts, it * * * became bound and liable * * * to furnish suitable equipment * * * safely to transport and deliver said goods at final destination, in like condition as when accepted for shipment, and its obligation under the law was the same as though the shipments were over its own line entirely, the connecting and delivering carriers in that sense acting as agents for said initial carrier in through transportation in interstate commerce. Disjunctively plaintiff alleges said liability extended to the carriage to Corpus Christi."

That "the defendant Steamship Company, as delivering and terminal carrier of said goods in interstate commerce, is likewise liable to the, plaintiff for the safe carriage for the entire journey * * * and, *in the alternative, from Corpus Christi to Boston*, and delivery at

destination * * * In Addition, defendant Steamship Company is the terminal carrier on whose line the law presumes, primarily, that any existing loss and damage occurred."

Then follow appropriate allegations as to delivery and bad condition, alleged resulting damage, etc.

The bills of lading are attached to and made a part of plaintiff's pleadings.

On the back of the bills of lading issued by the Steamship Company appears, among other things, the following:

"Sec. 1(a). The carrier or party in possession of any of the property herein described shall be liable *as at common law* for any loss thereof or damage thereto, except as hereinafter provided:

"Sec. 9(a). If all or any part of said property is carried by water over any part of said route, such water carriage shall be performed subject to all the terms and provisions of and all the exemptions from liability contained in, the Act of Congress of the United States, approved on February 13, 1893, and entitled 'An act relating to the navigation of vessels, etc.,' and of other statutes of the United States according carriers by water the protection of limited liability, and to the conditions contained in this bill of lading not inconsistent therewith or with this section." (Italics supplied.)

Defendant Lykes Coastwise Line, Inc., duly removed the two cases from the State court to this court. Its petition for removal set up the following grounds, in substance:

(1) That this is a suit arising under and by virtue of laws of the United States regulating commerce; and that since it appears from plaintiff's petition that the onions moved from Corpus Christi, Texas, to Boston, Massachusetts, upon the bills of lading attached to the petition for carriage by water, such carriage was distinct and separate as between the two defendants and the rights of the Steamship Company were regu-

lated and controlled exclusively by the laws of the United States, other than the Carmack amendment, and more particularly those certain laws and amendments respecting carriage of goods at sea commonly known as the Harter Act; and that the liability of the Steamship Company could not and does not depend, in whole or in part, upon § 20, of Title 49 U.S.C.A.

(2) Because the two causes should be consolidated and the total amount in the controversy would then exceed $3,000.00 exclusive of interest and costs.

The defendant Texas Mexican Railway Company did not join in the petition for removal. The whole cause, however, has been transferred here and the Railway Company has entered its appearance.

Plaintiff has moved to remand upon the ground that this suit does not involve a controversy properly within the jurisdiction of this court. The defendant Steamship Company has conceded that the second ground in its petition for removal—dealing with consolidation and the combined amount in controversy—is not good. It does not seek to sustain jurisdiction on diversity of citizenship since the amount in controversy in each suit does not exceed $3,000 exclusive of interest and cost; and defendant now concedes that plaintiff had the right to maintain separate suits irrespective of his motive in so doing.

Defendant Steamship Company likewise does not contend that the admiralty nature of the cause defeats the jurisdiction of the state court.

Plaintiff insists that the cases are not removable and that the State court had jurisdiction because the causes of action arose under the Carmack amendment, Title 49 U.S.C. § 20, par. (11), 49 U.S. C.A. § 20(11).

The pertinent portion of the removal statute, Title 28 U.S.C. § 71,[1] reads as follows:

"Any suit of a civil nature, at law or in equity, arising under the * * * laws of the United States * * * of which the district courts of the United States are given original jurisdiction, in any State court, may be removed by the defendant or defendants therein to the district court of the United States for the proper district. * * * No suit brought in any State court of competent jurisdiction against a railroad company, or other corporation, or person, engaged and carrying on the business of a common carrier, to recover damages for delay, loss of, or injury to property received for transportation by such common carrier under section 20 of Title 49, shall be removed to any court of the United States where the matter in controversy does not exceed, exclusive of interest and costs, the sum or value of $3,000."

Since the amount in controversy does not exceed $3,000 exclusive of interest and costs, it must first be determined whether this suit is brought under Sec. 20 of Title 49, the Interstate Commerce Act. Section 1 of that law provides that it shall apply to common carriers engaged in:

"(a) The transportation of passengers or property wholly by railroad, or partly by railroad and partly by water when both are used *under a common control, management, or arrangement for a continuous carriage or shipment*". (Italics supplied.)

Actions may be brought under Section 20, the Carmack amendment, as amended by the Cummins amendment, when the property is transported on a *through bill of lading*.

Defendant says that the Commerce Act is not applicable to the Steamship Company for the reason that it was averred in defendant's verified petition for removal that, *as to the shipments in 1936*, there were no joint or through rates established by the Steamship Company on file with the Interstate Commerce Commission; and because defend-

---

1. Now 28 U.S.C. §§ 1441, 1445.

ant denied under oath, *as to both shipments*, that there was any arrangement for joint or through rates between the defendants, and traversed the allegations in plaintiff's pleadings of a common arrangement for continuous carriage in interstate commerce, or a partnership; and because defendant alleged that plaintiff's allegations in these respects were false—fraudulently made for jurisdictional purposes.

The bills of lading attached to plaintiff's pleadings in the State court show that the onions in question actually moved on *separate* bills of lading. Were it not for plaintiff's allegations of a previous oral agreement, not merged into the separate bills of lading, and as to the alleged common arrangement between the defendants for continuous carriage, partnership, etc., the suit could hardly have been brought under the Carmack amendment. In view of these allegations, however, I think the pleadings bring the case within the amendment. Defendant's assertion that plaintiff has plead *conclusions* and not facts is not well taken, especially in view of the liberal construction called for under the new Rules of Civil Procedure.

A "common arrangement" is not to be inferred from such circumstances, as the practically continuous carriage of goods by rail and water which may be consistent with the independence permitted to water carriers under the statute. United States v. Munson S.S. Line, 283 U.S. 43, 51 S.Ct. 360, 75 L.Ed. 830. But this will not prevent plaintiff from establishing, if he is able to do so, the alleged "common arrangement" between the defendants for continuous carriage in interstate commerce, or the alleged partnership relation existing between them. In other words, under his pleadings in State court, the plaintiff, in my opinion, alleged sufficient facts which, if established, bring the Steamship Company under Section 1(a) of Title 49 U.S.C.A.; and, under the pleadings, plaintiff may be able to present evidence sufficient to warrant construing the separate bills of lading as through bills.

Defendant's verified allegations in the petition for removal that the *facts* alleged by plaintiff were false, and fraudulently made for the purpose of preventing the removal of the case to the United States Court, are not sufficient to overcome plaintiff's right to maintain the suit in State court. The *facts* in support of plaintiff's allegations of a previous oral agreement, a common arrangement between the defendants for continuous carriage, the applicable tariffs, the partnership, etc., will determine whether, as a matter of law, the suit is properly brought under the Carmack amendment.

Defendant's denial of these facts under oath goes to the *merits of the case*. It amounts to nothing more than a traverse of the cause of action. It is not unlike the situation in cases where the petition for removal charged that allegations of *joint* negligence was knowingly false. "It is well settled that the right of removal is not established by petition for removal which merely traverses the facts of plaintiff's petition." Farmers' Bank & Trust Co. of Hardinsburg, Ky. v. Atchison T. & S. F. Ry. Co., 8 Cir., 25 F.2d 23, 27, and authorities therein cited. See also Kraus v. Chicago B. & Q. R. Co., 8 Cir., 16 F.2d 79.

Under this construction of the pleadings, since plaintiff has charged a case under the Carmack amendment, the causes of action not being separable, and the Railway Company not having joined in the petition for removal, ordinarily the case should be remanded to the State court.

Defendant's second proposition, however, is that in any event at least one cause of action in each petition against the Steamship Company arises under a law regulating commerce other than the Carmack amendment, which actions are within the jurisdiction of the United States District Court and might have been originally brought here; and that they are, therefore, properly removable, irrespective of the amount in controversy.

This proposition is based upon the fact that plaintiff, in the alternative, stands

upon the *separate* bills of lading as to each defendant; and asks for judgment against each defendant for such loss and damage as may have been occasioned on each line.

■ Defendant points to numerous decisions holding that removal will be sustained in a case containing alternative causes of action, one of which is clearly removable even though the other is not. Strother v. Union Pac. R. Co., D.C., 220 F. 731, 732; Givens v. Wight, D.C., 247 F. 233; Jacobsen v. Chicago, M., St. P. & P. R. Co., 8 Cir., 66 F.2d 688. The cases have even gone so far as to hold that where the petition in the State court sets up two causes of action, one against *both* defendants, for *joint* negligence, which would not be removable and the other against only one defendant which is removable, the case against the latter defendant may be removed. Nichols v. Chesapeake & Ohio R. Co., 6 Cir., 195 F. 913.

This principle has been applied, however, in every case only where the right to remove upon one of the causes of action is *clear*. The question for decision, therefore, is: does plaintiff's alternative cause of action arise under the Harter Act, Title 46 U.S.C.A. §§ 190, 191, 192, 193, 194?

For, says the defendant, right of removal is given under Title 28 U.S.C. § 71, in:

"Any suit of a civil nature, at law or in equity, arising under the Constitution or laws of the United States * * * of which the district courts of the United States are given original jurisdiction".

And under Title 28 U.S.C. § 41:[2]

"The district courts shall have original jurisdiction as follows:

"(1) * * * or, where the matter in controversy exceeds, exclusive of interest and costs, the sum or value of $3000, and (a) arises under the Constitution or laws of the United States * * *. *The foregoing provision as to the sum or value of the matter in controversy shall not be construed to apply to any of the cases mentioned in the succeeding paragraphs of this section.*

\* \* \* \* \* \*

"* * * Eighth. Of all suits and proceedings *arising under* any law regulating commerce." (Italics supplied.)

It is the plaintiff's theory that his alternative cause of action is based upon the common law; that the Harter Act did not create the rights he asserts; that it merely prohibits stipulations in bills of lading relieving a shipowner from liability under certain conditions and exempts such owner from liability under certain conditions; and requires the issuance of bills of lading by the shipowner; and provides penalties for a violation by the shipowner of any of the provisions of the act.

It is defendant's theory that the Harter Act, even though it is stated in negative and prohibitory terms, creates substantive rights in the plaintiff; and therefore arises under the Harter Act.

The history and the purpose of the Harter Act is reviewed and discussed in The Delaware, 161 U.S. 459, 16 S.Ct. 516, 40 L.Ed. 771; The Willdomino, 3 Cir., 300 F. 5; The Irrawaddy, 171 U.S. 187, 18 S.Ct. 831, 43 L.Ed. 130; Koppers Connecticut Coke Co. v. James McWilliams Blue Line, 2 Cir., 89 F.2d 865.

Numerous cases, especially by the district and circuit courts of appeal have discussed the question as to whether a given cause of action is one arising under the Constitution or laws of the United States.

As stated by Mr. Justice Cardozo in Gully v. First Nat. Bank, 299 U.S. 109 and 115, 57 S.Ct. 96, 99, 81 L.Ed. 70:

"Not every question of federal law emerging in a suit is proof that a federal law is the basis of the suit. \* \* \*

"A genuine and present controversy, not merely a possible or conjec-

---

2. Now 28 U.S.C.A. §§ 1331, 1337.

tural one, must exist with reference thereto". (Citing authorities), "and the controversy must be disclosed upon the face of the complaint, unaided by the answer or by the petition for removal." (Citing authorities.)

"But in order to avail of the removal privilege conferred by section 28 in respect of a suit arising under the Constitution or laws of the United States, the facts showing that the suit is of that class must appear by the complaint in the state court". Gay v. Ruff, 292 U.S. 25, 33, 34, 54 S.Ct. 608, 612, 78 L.Ed. 1099.

Repeatedly the same test is set out by Mr. Justice Cardozo in Gully v. First Nat. Bank, supra—" 'The federal *nature of the right to be established* is decisive—not the source of the authority to establish it.' " (Italics supplied.)

Here plaintiff's alternative cause of action is for loss and damage upon the separate line of each carrier, based upon a bill of lading, or contract, from Corpus Christi, Texas, to Boston, Massachusetts, as applied to the Steamship Company. The bill of lading itself stipulates that the defendant shall be "liable *as at common law* for any loss thereof or damage thereto" except as provided; and one of the provisions is that carriage by water "shall be performed subject to all the terms and provisions of and all the exemptions from liability contained in" the Harter Act, "and of other statutes of the United States according carriers by water the protection of limited liability."

True, as held by the Circuit Court of Appeals for this Circuit in The Framlington Court, 69 F.2d 300, where the Harter Act was incorporated in a charter, "the parties are bound to take it with its burdens as well as its benefits and it is controlling;" but this statement was not made by the Court in connection with a jurisdictional question. Suppose the parties to an ordinary contract would write into it "subject to the Constitution and laws of the United States. This pro-

vision will be read by the courts into every contract, whether written therein or not; and the fact that subsequently some constitutional question might arise or some defense be available under an Act of Congress, would not constitute a case arising under the Constitution and laws of the United States.

Suppose the Harter Act had never been passed. The plaintiff would still have a cause of action under the common law. The defendant would have had the right to insert broad limitations of liability in the bill of lading. As it is, the plaintiff still has a cause of action under the common law, irrespective of the Act of Congress; and the defendant has, under the statute, certain defenses and limitations of his liability not available to him under the common law.

In attempting to analyze " 'The federal nature' " of plaintiff's right and distinguish it from the " 'source of the authority to establish it' ", this Court has met most of the difficulties pointed out in Gully v. First Nat. Bank, supra:

"If we follow the ascent far enough, countless claims of right can be discovered to have their source or their operative limits in the provisions of a federal statute or in the Constitution itself with its circumambient restrictions upon legislative power. To set bounds to the pursuit, the courts have formulated the distinction between controversies that are basic and those that are collateral, between disputes that are necessary and those that are merely possible. We shall be lost in a maze if we put that compass by."

The rights sought to be established by plaintiff are not, in my opinion, of a federal nature. True, most of the decisions under the Harter Act are by the Federal courts; and while the construction of bills of lading issued under the Act has been held to be a Federal question, yet the state courts have entertained suits involving these bills of lading. M. & T. Trust Co. v. Export S. S. Corp., 262 N.Y. 92, 186 N.E. 214.

It must be borne in mind that the very bills of lading here involved provide that the removing defendant shall be "*liable as at common law*" with the exceptions noted above as to water transportation. Thus the common law liability relied upon by plaintiff is clearly recognized by the parties to the contract. While defendant's defense may arise by virtue of the Harter Act, I feel confident that the State Court is as fully capable of applying the principles involved as this Court.

Plaintiff's motion to remand will be granted. Let an order be prepared in accordance with this memorandum.

## On Motion for Rehearing.

Defendant has filed a very vigorous and earnest motion for rehearing of the Court's memorandum of February 29th remanding the case to the State Court. Plaintiff has filed no reply.

After careful consideration, the Court is of the opinion that the motion for rehearing should be granted.

Even a casual reading of the Court's memorandum of February 29th discloses that there is considerable doubt as to jurisdiction. Indeed, the Court has not been entirely satisfied, in his own mind, with the disposition of the motion to remand. Most of the cases collated under Section 80, Title 28, U.S.C., Note 90,[1] hold that where there is a doubt as to the right of the Federal court to entertain jurisdiction, the case should be remanded to the State court. There is, however, considerable authority to the contrary. Among other cases in this group is that of McLaughlin v. Western Union Telegraph Co., D.C.La.1925, 7 F. 2d 177. Upon appeal this case was affirmed by the Circuit Court of Appeals for this Circuit, 17 F.2d 574.

Referring to the denial of the motion to remand, Judge Foster says:

"The suit was removed to the District Court, and a motion to remand was denied by the late Judge Battie, for reasons stated in an elaborate opinion. 7 F.2d 177. No question is raised as to the correctness of Judge Battie's decision."

However, Judge Hutcheson, in Pabst v. Roxana Petroleum Co., D.C.Tex., 30 F.2d 953, 954, disagrees with this viewpoint and, in making the statement that where the jurisdiction of the Federal court is doubtful good judgment requires remand to the State court, he uses the words, "the jurisdiction of which is beyond dispute."

In the instant case I do not regard the jurisdiction of the State court as being "beyond dispute."

Studying again the plaintiff's alternate count, based upon the bills of lading and against each carrier separately, I am impressed with the argument advanced by the defendant that the court placed to much stress upon the provision in the bill of lading that liability should be "as at common law;" for the exception is as much a part of the contract as the liability provision itself; and the exception reads that if any part of the property is carried by water over any part of the route, "such water carriage *shall be performed subject to all the terms and provisions* of and all the exemptions from liability contained in the act of Congress," etc. (Italics supplied.)

In other words, defendant's *liability* for water carriage, as well as its *exemptions* from such liability, is to be tested by the terms of the Harter Act. Plaintiff's alternative cause of action is based upon a bill of lading which the Act *requires* to be issued. It was so issued because the law *required* it. To determine plaintiff's *right to recover*, as well as *defendant's liability*, the Harter Act will have to be considered and construed.

As suggested by defendant in the motion for rehearing:

"The plaintiff here cannot be said to be enforcing a common law right

1. Now 28 U.S.C.A. § 1447.

any more than is a shipper for damage to an interstate shipment by railroad. * * * Clearly * * * the mere allegation of an interstate shipment automatically invokes the Carmack amendment and makes it a case arising under the laws of the United States regulating commerce. This occurs even though there is no *substantive standard of liability* imposed by the Carmack amendment. All it does is give the shipper the right to sue the initial and delivering carrier. The *substantive liability* is not altered. The courts have held that as to an interstate shipment by railroad some of the liabilities find their origin in the common law, but such an action is, regardless of what the parties chose to call it, one arising under the law of the United States regulating commerce." (Italics supplied.)

Again, as pointed out, plaintiff had a right to recover at common law upon various grounds not available to him since the passage of the Harter Act.

■ Further discussion of the authorities will not be helpful. Clearly the jurisdiction of the State court is doubtful. The removal statute provides that upon remand of a removed cause by the District court, "no appeal or writ of error * * * shall be allowed." The right to removal is a valuable right; as is likewise the right of a plaintiff to have a cause remanded which has been improperly removed; but in the one case no appeal lies, in the other it does.

In view of the importance of the question, and for all the reasons pointed out, I am of the opinion that it is my duty to grant the motion for rehearing and overrule plaintiff's motion to remand.

Let an order be prepared in accordance with this memorandum.