4 N.Y.2d 659 (1958)
General Accident Fire & Life Assurance Corporation, Ltd., Appellant,
v.
Salvatore Piazza, Defendant, and Stone's Express, Inc., et al., Respondent.
Court of Appeals of the State of New York.
Argued March 25, 1958.
Decided June 25, 1958.
Bernard Meyerson and Richards W. Hannah for appellant.
Alexander Gangel for Stone's Express, Inc., and another, respondents.
Chief Judge CONWAY and Judges DESMOND, DYE, FULD, FROESSEL and VAN VOORHIS concur.
*662 BURKE, J.
Plaintiff, General Accident Fire & Life Assurance Corporation, Ltd. (hereinafter referred to as General) commenced this action seeking a declaratory judgment with respect to the obligations of itself and the defendant, Globe Indemnity Company (hereinafter referred to as Globe) arising out of a pending negligence action.
The important facts, all of them undisputed, are as follows: Defendants, Stone's Express, Inc. (hereinafter Stone) and Ben Franklin Lines, Inc. (hereinafter Franklin) are both common *663 carriers for hire engaged in the motor transportation of goods. Each has a certificate of public convenience and necessity from the Interstate Commerce Commission. In September of 1952 Franklin hired a truck from Stone under a written lease. The leased vehicle was employed generally in Franklin's business which included from time to time both interstate and intrastate commerce. On the 23d of September, 1952 the truck was assigned by Franklin to pick up coils of copper wire at a plant located in Yonkers, New York, for delivery to a pier in Brooklyn, New York. This was the first stage of a trip that saw the goods ultimately delivered to certain western States. The second stage was by way of the American-Hawaiian Steamship Company to the west coast. Little evidence was adduced as to the precise nature of the shipping arrangements. It does appear that Franklin was aware of the eventual destination of the goods it carried. Apparently, however, the only part it played in the shipment was to transport the goods from Yonkers to the pier where they were turned over to the steamship line. In return for the goods Franklin received American-Hawaiian's dock receipts listing the consignee, Los Angeles as the destination and Franklin as the "delivering carrier to dock". Franklin was paid by the shipper for delivering the goods to the dock.
While being loaded on the truck at the Yonkers plant some of the wire coils fell and struck one Piazza who brought suit for personal injuries against Franklin, its driver-employee O'Brien and the owner of the truck, Stone. That suit is now pending in the Supreme Court, Bronx County.
Franklin is covered by liability insurance as named insured in a policy written by plaintiff General. Stone, as named insured, is covered by Globe. Both policies are standard in form and for the most part similar. Each contains the usual omnibus clause extending coverage to any person while using the vehicle and any person or organization legally responsible for its use, provided the actual use is with the named insured's permission. However, the policy issued by plaintiff to Franklin specifies that in the case of hired vehicles coverage is limited to "excess insurance over any other valid and collectible insurance available to the insured, either as an insured under a policy applicable with respect to the automobile or otherwise, against a loss covered hereunder".
*664 As noted, the Globe policy contains an omnibus clause, which if operative here would enlarge coverage to include as insured both Franklin and O'Brien. But indorsement in the Globe policy excludes from the purview of the omnibus clause, and in effect from all coverage as an insured, "any person or organization, or any agent, employee or contractor thereof, other than the named insured, who is required to carry automobile liability insurance under any motor carrier law because of transporting property for the named insured or for others".
Disagreement between the insurance companies as to the effect of the stated provisions prompted the commencement of this declaratory judgment action by General. Globe, Franklin, O'Brien, Stone and Piazza were served as defendants. All but Piazza appeared. The action prayed for a declaration with respect to these questions: (1) whether the truck leased to Franklin by Stone came within the hired automobile indorsement in the General policy, (2) whether that indorsement limited General's coverage to excess insurance over any other valid and collectible insurance available to Franklin, (3) whether the Globe policy covering Stone as named insured also covered O'Brien and Franklin by its omnibus clause thus making it other insurance within the meaning of plaintiff's "excess" provision, and (4) whether plaintiff is obliged to indemnify and defend the action brought by Piazza and cross complaint by Stone. The prayer for relief also requested an injunction against defendants restraining them from bringing an action on plaintiff's policy except insofar as it provides for excess insurance over the insurance afforded by the defendant Globe.
It is not now disputed that the answer to the first question must be in the affirmative. The truck leased by Franklin is, within the meaning of the General policy, a hired motor vehicle. The remaining questions are more difficult.
Plaintiff contended that Globe's policy, by virtue of the omnibus clause, covered both Franklin and O'Brien and that consequently its, plaintiff's, policy was limited to excess over the coverage provided by Globe. Globe's response to this contention was that Franklin at the time of the accident was required to have liability coverage under the Interstate Commerce Act and regulations of the commission and was thereby excluded from coverage (and O'Brien as well) under the Globe policy. *665 In turn plaintiff argued that the exclusionary provision in the Globe policy was ineffective for two reasons: first, because such an attempted exclusion would violate section 59 of the Vehicle and Traffic Law, and, second, because, even if valid, Franklin was in fact not required to carry insurance under the Federal regulations for the use of the truck which led to the Piazza accident.
The Referee concluded that General "is liable to defendant Ben Franklin Lines, Inc., to defend it in the above pending personal injury action * * * and to indemnify it as its insured under its policy and the provisions thereof described". As more fully described in the judgment, the Referee held that as between plaintiff and Globe the obligation to defend and indemnify Franklin and O'Brien lay solely with plaintiff. It may be implied that the Referee found Globe's policy had successfully excluded Franklin and O'Brien as insureds.
The Appellate Division unanimously affirmed the judgment without opinion.
We differ with the courts below. In our view the exclusionary clause, although not in contravention of section 59 of the Vehicle and Traffic Law, was inapplicable here since it has not been shown that Franklin was required by law to carry insurance for the trip in question.
Appellant contends in effect that section 59 requires that all policies of liability insurance issued to the owner of a motor vehicle not only afford coverage to the owner for his vicarious liability, created by the statute, but in addition that they cover every user with permission as an additional insured. This contention was made and rejected in Kuhn v. Auto Cab Mut. Ind. Co. (244 App. Div. 272, affd. 270 N.Y. 587). In that case plaintiff recovered a judgment against the operator of an automobile but had not joined the owner as a defendant. Execution was issued upon the judgment and returned wholly unsatisfied, whereupon plaintiff brought an action against the owner's insurer. That policy did not by its terms cover the operator but plaintiff contended, as does plaintiff here, that such coverage was required by statute. Both the Appellate Division and the Court of Appeals rejected the contention. The Appellate Division said: "The statutes do not provide any such coverage. Section 109 of the Insurance Law does not provide coverage *666 to the employee or permittee of an owner of a car. That statute, therefore, does not project into the policy in suit any such coverage. Neither is there any such coverage contained in section 59 or section 17 of the Vehicle and Traffic Law. The coverage required by those statutes is coverage of the owner as the assured, for the acts of his employee or permittee in the course of the operation of the owner's car." (P. 273.)
This holding was reaffirmed in Chesher v. United States Cas. Co. (303 N.Y. 589) and cited with approval in the recent case of Phoenix Ins. Co. v. Guthiel (2 N Y 2d 584, 588). Neither the case of Switzer v. Merchants Mut. Cas. Co. (2 N Y 2d 575) nor the dissents in the Phoenix case call for any other result. Although we did permit an action against the owner's insurer on a judgment obtained against the operator in the Switzer case, that action was predicated upon the insurance contract as written. We held that the policy, by its terms, covered the operator as an insured. Here, of course, if the exclusionary clause in the Globe's policy is otherwise applicable then by its terms that policy does not cover Franklin and O'Brien. Indeed, if appellant's view had been adopted by our court in the Switzer case there would have been no need to construe the actual language of the policy. Coverage of the operator by the dealer's insurer would have flowed as a matter of law by virtue of section 59. We think it is clear that it does not.
Although not violative of section 59, the exclusionary clause is nonetheless inapplicable here for Franklin was, as a matter of fact, not "required to carry automobile liability insurance under any motor carrier law".
As defined by the contentions of the parties on this phase of the case, the issue was whether or not the Interstate Commerce Act and Interstate Commerce Commission regulations required Franklin to provide liability insurance on the subject vehicle during its use in hauling goods from the Yonkers plant to the Brooklyn pier.
Respondent correctly points out that a common carrier by motor vehicle cannot lawfully engage in interstate shipments unless there is in force a certificate of public convenience and necessity from the Interstate Commerce Commission authorizing such operations (U. S. Code, tit. 49, § 306, subd. [a], par. [1]). It is also true that the Motor Carrier Act forbids the *667 issuance of the necessary certificate unless the carrier has complied with all commission regulations (U. S. Code, tit. 49, § 315) and that those regulations generally require that a carrier in interstate commerce procure minimum amounts of liability insurance (Code of Fed. Reg., tit. 49, pt. 174). However, by provision of the act, in certain specified instances a carrier, though engaged in interstate commerce, may nevertheless be exempt from these requirements. Thus, by virtue of section 303 (subd. [b], par. [8]), the requirement is made inapplicable to the transportation of property in interstate commerce wholly within certain specified zones, among which is the zone comprised of New York City and Yonkers (Code of Fed. Reg., tit. 49, § 170.1, subd. [a]; see 1957 Supp., § 170.1, subd. [b]; § 170.16) except when such transportation is "under a common control, management, or arrangement for a continuous carriage or shipment to or from a point without such municipality, municipalities or zone" (U. S. Code, tit. 49, § 303, subd. [b], par. [8]).
No argument is made that the transportation from Yonkers to Brooklyn by Franklin was under a "common control or management" for continuous carriage to the west coast. What respondent does contend, and this contention frames the issue in its simplest form, is that the carriage by Franklin was under a "common arrangement for a continuous carriage" to the west coast.
One thing seems clear. A mere finding that the carriage was part of an interstate shipment is not sufficient to remove Franklin from the exception created by section 303. Indeed if the shipment were not in fact part of interstate commerce there would be no need for a statutory exception since the Federal jurisdiction is based upon that fact. The language of section 303 excepts the described types of interstate shipment unless, and this is an exception to the exception, the shipment is not only in interstate commerce but also under a "common control" etc. Consequently, the cases cited by the respondent dealing only with the meaning of "interstate commerce" as used in various contexts and having nothing to do with the force and effect of the language of the exception now confronting us, are of little help. This point is made rather well in one of the Federal cases, construing and applying the very language *668 used in section 303. In United States v. Munson S. S. Line (283 U. S. 43), the Supreme Court was called upon to decide whether a certain transportation arrangement constituted a "common arrangement for a continuous carriage or shipment" within the meaning of a section of the Interstate Commerce Act. The court said: "It is apparent that a mere practical continuity in the transportation is not enough, as the question under the statute is not simply whether there was a continuous carriage or shipment, but whether that carriage or shipment was pursuant to a common arrangement." (United States v. Munson S. S. Line, supra, p. 47.)
The court went on to hold that, since the carrier there had a contract and rate independent of those of the participating carrier and it received its instructions separately and directly from the shipper, the transportation was not under a common arrangement. The fact that the transportation by the carrier constituted one stage of an interstate shipment did not suffice to bring it within the statute's language.
The Munson decision is representative of the cases applying the subject language. All of them require considerably more than a simple showing that the carriage is part of a continuous shipment which in fact crosses State lines or is "interstate" (see Muller v. Lyke Coastwise Line, 144 F.Supp. 135 [U. S. D. C., S. D. Texas, 1940]; Camden Iron Works v. United States, 158 F. 561; cf. Hudson Handkerchief Mfg. Corp. v. Porto Rican Express Co., 274 App. Div. 509). A "common arrangement", as defined in the cases, amounts to an agreement or understanding between the connecting carriers with respect to the transportation and charges. It may be evidenced by the fact that the goods or freight were carried under a through bill of lading stating a division of charges (see Mutual Tr. Co. v. United States, 178 F. 664; Cincinnati, N. O. & Te. Pac. Ry. v. Interstate Commerce Comm., 162 U. S. 184; Camden Iron Works v. United States, supra; Baer Bros. v. Denver & R. G. R. R., 233 U. S. 479, 491; Standard Oil Co. of New York v. United States, 179 F. 614). It has also been found where the initial carrier gave the shipper a through receipt and made all arrangements with the connecting carrier independently of the shipper (Hudson Handkerchief Mfg. Corp. v. Porto Rican Express Co., supra). *669 Nothing indicates its presence in the case before us. The record establishes that Franklin's part in the shipment was wholly within New York and Yonkers. This places it within the exception created by section 303. There is no evidence in the record to establish that it came within the exception to that exception as transportation under a "common arrangement" for a continuous carriage or shipment. It does not appear that Franklin's shipment was under a through bill of lading or that any agreement had been made by Franklin with American-Hawaiian as to rates or transportation or that there was any concert of activity between the carriers. From all that appears Franklin's part in the transportation was confined to its carriage to the docks. It was paid by the shipper for that shipment and was in no way concerned with the remainder of the carriage. Under these circumstances it cannot be said that there existed a "common arrangement" as that term has been defined in the cases.
Consequently, Franklin was not required to comply with the I. C. C. regulations on this shipment and, as a result, the exclusionary clause in the Globe policy was not applicable. Both General and Globe, therefore, covered Stone, Franklin and O'Brien as insureds. However, since the General policy is expressly stated to be excess it will be required to contribute to the indemnity, if any, only after the limits of the Globe policy are consumed. This is so notwithstanding a standard "other insurance" clause in the Globe contract which provides that it shall not be liable for a greater proportion of any loss than the applicable limit of liability stated in the declaration bears to the total applicable limit of liability of all valid and collectible insurance covering the loss. The effect of that clause is only to require prorata contribution by other primary insurance but not by insurance such as that issued by General which by its terms is made excess and secondary (see 8 Appleman on Insurance Law and Practice, § 4914).
Since Globe is the primary insurer, it has the primary duty to defend on behalf of the insureds. On the other hand General may, if it desires, protect its interest in the matter by participating in the defense together with Globe.
*670 The judgment of the Appellate Division should be reversed, with costs in all courts, and the matter remitted to Trial Term for further proceedings not inconsistent with this opinion.
Judgment reversed, etc.