[828 NE2d 959, 796 NYS2d 2]

GENERAL MOTORS ACCEPTANCE CORPORATION et al., Respondents, v NATIONWIDE INSURANCE COMPANY, Appellant.

Argued February 10, 2005; decided March 31, 2005

**POINTS OF COUNSEL**

*Nixon Peabody LLP,* New York City (*David H. Tennant* and *Aidan M. McCormack* of counsel), for appellant. I. Fireman's Fund Insurance Company was obligated to pay the defense costs for its insured (General Motors Acceptance Corporation) after Nationwide Insurance Company tendered its policy limits. (*Fama v Metropolitan Prop. & Cas. Ins. Co.,* 169 Misc 2d 872; *Argonaut Ins. Co., Inc. v U.S. Fire Ins. Co.,* 728 F Supp 298.) II. Even if Fireman's Fund Insurance Company was not contractually obligated to pay for the defense costs despite its declared duty to do so after assuming control of the defense, Fireman's Fund was obligated to pay its fair share of those defense costs under equitable principles recognized in New York. (*Schulman Inv. Co. v Olin Corp.,* 514 F Supp 572; *Sanabria v American Home Assur. Co.,* 113 AD2d 193, 68 NY2d 866; *Cassara v Nationwide Mut. Ins. Co.,* 144 AD2d 974; *Pallotta v Aetna Ins. Co.,* 66 Misc 2d 929; *Russo v Rochford,* 123 Misc 2d 55; *Hertz Corp. v Government Empls. Ins. Co.,* 250 AD2d 181; *Guaranty Natl. Ins. Co. v American Motorists Ins. Co.,* 758 F Supp 1394; *Belmer v Nationwide Mut. Ins. Co.,* 157 Misc 2d 845; *Lumbermens Mut. Cas. Co. v Allstate Ins. Co.,* 51 NY2d 651.) III. The lower court improperly awarded prejudgment interest to Fireman's Fund Insurance Company.

*Lawrence, Worden & Rainis, P.C.,* Melville (*Roger B. Lawrence* of counsel), for respondents. I. The offer to settle the *Mammano* suit for the single limit of $100,000 that was rejected by plaintiff was not tender of the limits of the Nationwide Insurance Company policy and did not serve to relieve Nationwide of its obligation to defend its insureds under the policy. (*Fama v Metropolitan Prop. & Cas. Ins. Co.,* 169 Misc 2d 872, 242 AD2d 663; *State Farm Mut. Auto. Ins. Co. v Tucker,* 188 AD2d 458.) II. Defendant-appellant Nationwide Insurance Company's insurance policy is the only primary policy available to the underlying claim, and as such contained the sole obligation to pay all defense costs of the insured, General Motors Acceptance

Corporation. (*Hartford Acc. & Indem. Co. v Continental Natl. Am. Ins. Cos.*, 861 F2d 1184; *Texas Empls. Ins. Assn. v Underwriting Members of Lloyds,* 836 F Supp 398; *Continental Cas. Co. v Synalloy Corp.,* 667 F Supp 1523; *Insurance Co. of N. Am. v Medical Protective Co.,* 768 F2d 315; *Guaranty Natl. Ins. Co. v American Motorists Ins. Co.,* 758 F Supp 1394; *Hartford Acc. & Indem. Co. v Michigan Mut. Ins. Co.,* 93 AD2d 337, 61 NY2d 569; *Firemen's Ins. Co. of Washington, D.C. v Federal Ins. Co.,* 233 AD2d 193; *Fidelity Gen. Ins. Co. v Aetna Ins. Co.,* 27 AD2d 932; *International Paper Co. v Continental Cas. Co.,* 35 NY2d 322; *Everlast Sporting Goods Mfg. Co. v Aetna Ins. Co.,* 23 AD2d 641.) III. Forcing excess insurers to share in the costs of defense with primary insurers, while benefiting Nationwide Insurance Company in this specific case, would otherwise work against the concepts of fairness and the predictable and efficient administration of justice. (*Thomas v Washington Gas Light Co.,* 448 US 261; *Dankoff v Bowling Proprietors Assn. of Am.,* 69 Misc 2d 658; *Broome County Coop. Fire Ins. Co. v Aetna Life & Cas. Co.,* 75 Misc 2d 587.) IV. Prejudgment interest was mandated where the basis for the judgment was the contractual breach of defendant-appellant Nationwide Insurance Company as well as the quasi contractual obligation to plaintiff-respondent insurer. (*Board of Educ. of Hudson City School Dist. v Sargent, Webster, Crenshaw & Folley,* 71 NY2d 21; *Pilewski v Solymosy,* 266 AD2d 83; *Isaacs v Incentive Sys.,* 52 AD2d 550; *Utica Mut. Ins. Co. v Sweet Constr. Corp.,* 169 AD2d 382; *Employers' Liab. Assur. Corp. v Empire City Iron Works,* 19 Misc 2d 963; *Neimark v Martin,* 7 AD2d 934; *Fagnani v American Home Assur. Co.,* 101 AD2d 803; *Saratoga Spa & Bath v Beeche Sys. Corp.,* 230 AD2d 326, 90 NY2d 979; *Aetna Cas. & Sur. Co. v Home Ins. Co.,* 882 F Supp 1328, 1355; *Baratta v S.D. Cohn & Co.,* 656 F Supp 1.)

**OPINION OF THE COURT**

CIPARICK, J.

We are called upon to determine whether an allocation of defense costs between a primary and excess insurer is warranted. We conclude that where, as here, two coincidental primary policies exist—one excess to the other by reason of competing "other insurance" provisions—and where the excess carrier has voluntarily assumed and marshaled the insured's defense, an allocation of defense costs based on primary policy limits is appropriate. Here the primary policy limits are identical, warranting a 50-50 split.

In 1994, John C. Sabin, not a party to this action, leased an SUV from plaintiff General Motors Acceptance Corporation (GMAC). The lease agreement required Sabin to obtain an automobile insurance policy and include GMAC as an additional insured under the policy. Sabin procured a suitable primary insurance policy through defendant Nationwide Insurance Company. This policy limited liability to $100,000 per person and $300,000 per occurrence. Nationwide's policy made explicit that it would "defend at [its] expense, with attorneys of [its] choice, any suit against the insured."

In order to cover its potential liability in the event the lessee failed to fulfill its obligation to obtain insurance, and to obtain excess coverage in the event of catastrophic injury, GMAC purchased two distinct policies from plaintiff Fireman's Fund Insurance Company. Fireman's issued both a primary "Business Auto Policy," with liability limits comparable to Nationwide's policy, and an "Excess Liability Policy," or an "umbrella" policy, with a substantially greater limit of $9,000,000 per occurrence. The primary Business Auto Policy stated that Fireman's had "the right and duty to defend any suit asking for [ ] damages." As to other insurance, the policy stated that the primary policy's insurance coverage was "excess over any other collectible insurance, whether primary, excess, or contingent." There was no similar limitation on Fireman's duty to defend. Fireman's true excess or umbrella policy, by contrast, specifically limited the duty to defend to instances where no primary policy or other insurance applied, stating that it would "assume charge of the settlement or defense of any claim or Suit against the Insured seeking damages to which this policy applies and to which no *Primary Insurance* or *Other Insurance* applies."

On April 5, 1995, Sabin drove his leased vehicle through an intersection, colliding with a dump truck and another passenger vehicle. Two individuals were seriously injured and a third died in the accident. The injured parties, and decedent's estate, commenced three separate lawsuits against, among others, GMAC as owner of the offending vehicle. Jeanette Mammano, as guardian of Elizabeth Mammano, whose injuries left her in a permanent vegetative state, commenced the action that exposed GMAC to the greatest potential liability. Nationwide's primary policy and both Fireman's policies were in effect on the date of the accident. Prior to commencement of this action, Nationwide—reasonably expecting any award to exceed policy limits—tendered its entire policy to Mammano's attorney in exchange

for a general release. Counsel refused the tender and the case proceeded.

Nationwide originally undertook GMAC's defense of the *Mammano* action. In a letter dated October 24, 1997, however, Nationwide wrote that it was tendering the defense to Fireman's. "As our available liability limit is only $100,000 it represents only 1% of the total indemnification potential considering [Fireman's] limits of nine million." Nationwide further wrote that "[i]t only makes sense therefore that [Fireman's] designate counsel that should continue with the defense of this matter, under your direction." In a letter dated November 25, 1997, Fireman's voluntarily agreed that it would "assume the defense of . . . GMAC, but it [would] do so while reserving its rights to pursue collection of all defense costs from Nationwide expended in Fireman's Fund's defense of these actions." Thereafter Fireman's retained counsel vigorously defended the action in an effort to reduce the enormous exposure of GMAC and Fireman's.

In January 1999, the parties settled the *Mammano* action. The settlement agreement provided for a one-time payment of $4.5 million, of which Fireman's paid $3.3 million and provided an annuity of $10,000 a month for life with guaranteed payments for 10 years. The settlement nearly exhausted the $9.1 million limit provided under both Fireman's policies. Nationwide contributed its entire $100,000 policy to the settlement. Prior to settling, Fireman's amassed over $200,000 in legal fees defending the action.

Following settlement, Fireman's sought to recover all its legal expenses from Nationwide. When Nationwide refused to contribute, Fireman's and GMAC commenced the underlying action to recover the defense costs. Supreme Court granted plaintiffs Fireman's and GMAC summary judgment and awarded them full reimbursement of defense costs, and the Appellate Division affirmed.* We granted defendant Nationwide leave to appeal and now reverse.

A primary insurer "has the primary duty to defend on behalf of [its] insureds" (*General Acc. Fire & Life Assur. Corp. v Piazza*, 4 NY2d 659, 669 [1958]; *see also* Ostrager and Newman, Handbook on Insurance Coverage Disputes § 6.03 [a] [12th ed]).

---

* Supreme Court approved a total award to Fireman's and GMAC of $289,052.18, representing reasonable attorneys' fees and costs, with statutory interest from January 1999.

Moreover, a primary insurer has a duty to defend "without any entitlement to contribution from an excess insurer" (*Firemen's Ins. Co. of Washington, D.C. v Federal Ins. Co.*, 233 AD2d 193 [1st Dept 1996]). An excess carrier may, in its discretion, "protect its interest . . . by participating in the defense" (*General Acc. Fire & Life*, 4 NY2d at 669). Unlike a primary insurer, however, there is no obligation to do so.

We have liberally construed an insurer's general duty to defend in order to ensure the adequate and timely investigation of a claim and defense of an insured, regardless of the insured's ultimate likelihood of success on the merits. Consequently, an insurer's duty to defend is broader than its duty to indemnify (*see Fitzpatrick v American Honda Motor Co.*, 78 NY2d 61, 65-66 [1991]).

Here, Fireman's issued two distinct policies—a primary policy deemed excess by the competing "other insurance" provisions and a true excess, or "umbrella," policy where the duty to defend and the duty to indemnify came into effect only after the limits of the underlying primary coverage were exhausted. Furthermore, Fireman's accepted the defense of the action and conducted it in a most thorough manner suitable to protect its own interests and that of its insured. The circumstances of this case thus allowed both Nationwide and Fireman's to defend the action on behalf of GMAC. Moreover, insofar as both Nationwide and Fireman's shared this obligation, and each participated in the defense, they are both liable for the defense costs, here in equal shares as the policy limits of the coincidental primary auto liability policies are identical.

Both primary insurance policies contain specific language reaffirming their duties, as primary insurers, to defend the insured. While Fireman's primary policy coverage is deemed "excess" by virtue of other collectible insurance, the limiting language is directed to its obligation to contribute to a settlement or judgment, not to its duty to defend. Moreover, when Nationwide tendered the defense, Fireman's accepted and proceeded to defend the action in a manner that it deemed most appropriate—albeit reserving its rights to collect defense costs from Nationwide. In essence, Fireman's, in accepting the defense here, embraced the specific language of its primary policy requiring it to "defend any suit asking for [ ] damages." In assuming the defense, Fireman's triggered its own duty to defend the action, a duty that overlapped with Nationwide's same obligation.

Fireman's reservation of rights put Nationwide on notice that Fireman's acceptance did not relieve Nationwide of its policy obligations. At a minimum, Nationwide knew that it would be liable for a share of the defense costs. Consequently, insofar as the primary insurers' respective policy limits were identical, an allocation in this case requires that the total defense costs be shared equally.

We are mindful of the fact that these policies were both coincidental primary policies. Primary insurance premiums are based, at least in part, on the insurer's consideration that it may be liable to defend an action. In this sense, "primary" policy premiums are higher, relatively speaking, than "excess" premiums, because the primary insurer contemplates defending a potential lawsuit when it contracts with the insured. A primary insurer's duty to defend is not diminished, however, nor is it entitled to defend an action less vigorously, simply because its policy limits are more easily exceeded in any given case. Relieving primary insurers of this duty to defend would provide a windfall to the carrier insofar as the costs of defense—litigation insurance—are contemplated by, and reflected in, the premiums charged for primary coverage. This is in contrast to a true excess, or "umbrella," policy, where the duty to defend is not as readily triggered.

Both Fireman's and Nationwide issued primary policies commensurate with their respective expectations and bargained-for rights and obligations. Therefore, requiring both Fireman's and Nationwide, as coincidental primary insurers having the same policy limits, to contribute equally to defense costs is consistent with the requirement that insurance contracts be interpreted "according to the reasonable expectation and purpose of the ordinary businessman when making an ordinary business contract" (*Atlantic Cement Co., Inc. v Fidelity & Cas. Co. of N.Y.*, 91 AD2d 412, 418 [1st Dept 1983], *affd* 63 NY2d 798 [1984]). It is also consistent with our general reluctance to relieve a primary insurer of its duty to defend (*see generally Fitzpatrick*, 78 NY2d 61 [1991]). In this instance, it is apparent that both Fireman's and Nationwide, by virtue of their status as primary insurers, and additionally through their course of conduct, could reasonably have expected to share the expense of the defense.

Thus, we reject Nationwide's position, followed in only a minority of jurisdictions, that an equitable allocation between a primary and excess insurer must be realized and hold only that,

under the circumstances of this case, both insurers should be required to share defense costs. Here, the policy limits of the coincidental policies lead to a 50-50 split (*cf. Federal Ins. Co. v Atlantic Natl. Ins. Co.*, 25 NY2d 71 [1969]).

Accordingly, the order of the Appellate Division should be reversed, with costs, and the case remitted to Supreme Court for further proceedings in accordance with this opinion.

R.S. SMITH, J. (concurring). I agree with the result reached by the majority, and I agree in part with its reasoning. I think the majority is correct in rejecting a general doctrine of "equitable allocation" between primary and excess insurers. I also agree that, since Fireman's chose to take over the defense in this case, it is liable under its policy for a fair portion of defense costs. Indeed, I think the facts here would support allocating to Fireman's more than 50% of the burden, but allocations like this are not an exact science, and the majority's 50-50 division is not unreasonable.

I differ with the majority, however, in its reliance on the existence of two "coincidental" defense policies. As the majority notes, the terms of Nationwide's policy and Fireman's "Business Auto Policy" render the latter "excess" with respect to the former. The relevant language in the Fireman's Business Auto Policy—"The insurance provided by this policy is excess over any other collectible insurance, whether primary, excess, or contingent"—is on its face equally applicable to defense costs and damages. The majority seems to suggest that, as to defense costs, the Nationwide policy and the Fireman's Business Auto Policy were both primary, but I see no valid reason for reaching that conclusion.

I believe the Fireman's "true excess" policy, the "Excess Liability Policy," provides a sounder basis for compelling Fireman's to share defense costs. That policy provided nine million dollars in coverage—many times the amount provided by the other two policies. This large exposure obviously furnished the motivation for Fireman's to assume, as it did, control of the defense of the case.

The Excess Liability Policy also gave Fireman's the right to defend the case—at its own expense. The policy provided that Fireman's "will have the right and opportunity, although not the obligation, to associate with the Primary Insurer in the defense and control of any claim or Suit." The policy also provided that "[w]ith respect to any claim or Suit of which We

[Fireman's] assume charge of the settlement or defense, We will pay . . . All expenses We incur."

Fireman's did assume charge of the defense of the *Mammano* case, and thus it became obligated to pay the expenses it incurred. That did not release Nationwide from its own obligation under the primary policy. Nationwide's policy excused it from defending claims only "[a]fter the limits of this coverage have been paid," and I agree with the majority that that never occurred.

Thus, the terms of the Fireman's Excess Liability Policy and the terms of the Nationwide policy both rendered the insurers liable for defense costs on the facts of this case. It is only these policy clauses that, in my view, make an allocation between the two insurers appropriate.

Chief Judge KAYE and Judges G.B. SMITH, GRAFFEO and READ concur with Judge CIPARICK; Judge R.S. SMITH concurs in result in a separate opinion in which Judge ROSENBLATT concurs.

Order reversed, etc.