■ JOHN TORTOSO et al., Appellants, v METLIFE AUTO & HOME INSURANCE COMPANY et al., Respondents. [799 NYS2d 506]—

Order, Supreme Court, New York County (Paul G. Feinman, J.), entered March 24, 2004, which granted defendants' motion for summary judgment dismissing the complaint and denied plaintiffs' cross motion for partial summary judgment, unanimously modified, on the law, to the extent of reinstating the first cause of action for a declaratory judgment and the second cause of action for money damages arising from breach of contract, and otherwise affirmed, without costs.

Matthew Tortoso is the son of the policyholders, and was employed part-time at a bar known as "Le Bar Bat" as a banquet assistant. Six former female employees of the bar brought a federal lawsuit alleging sexually and, in some cases, racially discriminatory treatment by the bar and various of its employees. Four of the eleven causes of action alleged in the federal complaint were asserted against Matthew. However, the District Court dismissed three of those causes, leaving only the one alleging defamation and libel per se. Specifically, Matthew was alleged to have distributed flyers in the neighborhood where the former employees resided, which stated the women had been arrested for prostitution and sex crimes involving minors, and were suspected of drug abuse. Matthew's affidavit in opposition to defendants' motion for summary judgment claimed he distributed the flyers at the behest of his boss (a codefendant in the federal action) and that he was not told the content of the flyers. He further claims that after distributing some flyers, he took the time to read one, at which point he stopped distributing them and threw away the rest in his possession.

After receipt of the summons and complaint in the federal action, the Tortosos made a claim to Metropolitan requesting that it provide a defense in the lawsuit. Metropolitan disclaimed in a letter stating that the claims asserted did not constitute an "occurrence" as defined in the policy, the nature of the damages sought did not fall within the policy definitions of either "bodily injury" or "property damage," and that the policy excluded coverage for intentional acts, where the resultant harm was inherent in the nature of the alleged acts. The Tortosos retained an attorney to defend Matthew at their own expense. Subsequently, he elected to proceed pro se.

Four of the federal plaintiffs brought an action in Supreme Court, New York County, against various of the federal defendants, including Matthew, for violation of New York State

and New York City Human Rights Laws. Matthew represented himself and the actions were settled for $30,000.

Plaintiffs thereafter brought this action seeking a declaration that Metropolitan breached its policy of insurance by refusing to provide a defense and indemnity. They also sought monetary damages. The complaint also alleged that Metropolitan had violated the Insurance Law and the General Business Law because of deceptive business practices. Metropolitan moved for summary judgment dismissing the complaint on the ground that Matthew's actions did not meet the definition of an "occurrence" under the policy. It also argued that the policy contained an exclusion for intentional acts of the insured. Unlike its disclaimer letter, however, Metropolitan did not assert that the nature of the damages sought does not fall within the definitions of "bodily injury." Although it did not make a declaration in Metropolitan's favor, the IAS court granted the motion, holding the underlying federal complaint set forth allegations of intentional actions that are not accidental in nature, thus falling within the policy's exclusion of coverage. It also dismissed the causes of action claiming deceptive business practices.

A liability insurer is obligated to defend its insured in a pending lawsuit if the pleadings allege a covered occurrence, even though facts outside the pleadings indicate that the claim is not covered (*Fitzpatrick v American Honda Motor Co.,* 78 NY2d 61, 63 [1991]). This duty to defend is broader than an insurer's duty to indemnify and should be "liberally construed . . . regardless of the insured's ultimate likelihood of success on the merits" (*General Motors Acceptance Corp. v Nationwide Ins. Co.,* 4 NY3d 451, 456 [2005]). "[A]n insurer can be relieved of its duty to defend if it establishes as a matter of law that there is no possible factual or legal basis on which it might eventually be obligated to indemnify its insured under any policy provision" (*Allstate Ins. Co. v Zuk,* 78 NY2d 41, 45 [1991]).

Where a policy provides coverage for "bodily injury," such coverage encompasses a claim for "purely emotional distress" (*see Lavanant v General Acc. Ins. Co. of Am.,* 79 NY2d 623, 630-631 [1992]). Thus, if the policy is otherwise found to provide coverage for Matthew's conduct, the fact that the injuries suffered were emotional rather than physical is not a ground for disclaimer.

The policy requires that Metropolitan provide a defense where there has been an occurrence, i.e., an accident that results in bodily injury. Exactly what constitutes an accident is not defined in the policy. However, an accident may be considered "an event which is unanticipated and the product of thoughtlessness

rather than willfulness" (*McGroarty v Great Am. Ins. Co.,* 36 NY2d 358, 363 [1975]). Indeed, "No all-inclusive definition of 'accident' is possible, nor any formulation of a test applicable in every case, for the word has been employed in a number of senses and given varying meanings depending upon the relevant context" (*Matter of Croshier v Levitt,* 5 NY2d 259, 262 [1959]).

An intentional act may, but need not necessarily, result in intended consequences. "Clearly more than a causal connection between the intentional act and the resultant harm is required to prove that the harm was intended" (*Allstate Ins. Co. v Mugavero,* 79 NY2d 153, 160 [1992]).

Here, Matthew claims he distributed the defamatory flyers without knowledge of their falsity and without intent to cause harm. The policy in question does not exclude claims for defamation. Since the waitresses were not public figures, in order to recover on their cause of action for defamation they would have had to make "a showing of common-law malice, or ill-will" (*Town of Massena v Healthcare Underwriters Mut. Ins. Co.,* 98 NY2d 435, 445 [2002]). Although the act of distributing the flyers was obviously intentional, the present record does not yet support a conclusion that the consequence, i.e., the defamation, was. There are questions concerning Matthew's knowledge and state of mind at the time of the incident that require further development. While Matthew's claim that he did not read the flyers may present an issue of credibility, it is not so incredible that it must be rejected as a matter of law.

Therefore, plaintiffs have raised a question of fact as to whether the dissemination was an occurrence. Inquiry should be made to determine whether Matthew was free of ill-will, as he claims, before determining whether the distribution of the flyers was an occurrence.

The same reasoning applies to Metropolitan's claim that the policy excludes coverage for bodily injury resulting from the insured's intentional acts. If it is ascertained that Matthew "reasonably expected or intended" to defame the waitresses, he would not be entitled to the costs of his defense, or to indemnity. Unlike the request for coverage in the first instance, the burden of demonstrating that the exclusion applies lies with the insurer (*see Frontier Insulation Contrs. v Merchants Mut. Ins. Co.,* 91 NY2d 169, 175 [1997]). Concur—Tom, J.P., Mazzarelli, Marlow, Nardelli and Sweeny, JJ.