[873 NYS2d 607]

FIELDSTON PROPERTY OWNERS ASSOCIATION, INC., Plaintiff, v HERMITAGE INSURANCE COMPANY, INC., Appellant, and CHUBB GROUP OF INSURANCE COMPANIES, Respondent. HERMITAGE INSURANCE COMPANY, INC., Appellant-Respondent, v FIELDSTON PROPERTY OWNERS ASSOCIATION, INC., et al., Defendants, and FEDERAL INSURANCE COMPANY, Respondent-Appellant.

First Department, February 26, 2009

APPEARANCES OF COUNSEL

*Gold, Stewart, Kravatz, Benes & Stone, LLP*, Westbury (*James F. Stewart* and *Jeffrey B. Gold* of counsel), for appellant/appellant-respondent.

*Kaufman Borgeest & Ryan LLP*, Valhalla (*Jacqueline Mandell* of counsel), for respondent/respondent-appellant.

## OPINION OF THE COURT

McGuire, J.

This is a consolidated appeal in two declaratory judgment actions involving a dispute between two insurers, Hermitage Insurance Company, Inc. and Federal Insurance Company, over responsibility for the costs of defending their mutual insured, Fieldston Property Owners Association, Inc., and certain of its officers or directors (collectively, the Fieldston parties), in two

actions that brought essentially the same set of claims alleging various wrongful acts and statements by officers or directors of Fieldston. The plaintiff in the first of the underlying actions is Chapel Farm Estates, Inc. Although nominally a distinct entity, the plaintiff in the second of the underlying actions is Chapel Farm.

Hermitage issued a "Commercial General Liability Policy" (the CGL policy) with an effective policy period of July 5, 2000 to July 5, 2001 and a per occurrence limit of liability of $1,000,000. The CGL policy is an "occurrence policy" that provides coverage for certain acts giving rise to liability occurring during the policy period. Pursuant to the policy, Hermitage provides coverage for "bodily injury," "property damage" and "personal and advertising injury" within the meaning of those terms as defined in the policy. Federal issued an "Association Directors and Officers Liability Policy" (the D&O policy), having an effective policy period of February 13, 1999 to February 13, 2002 and a "per loss" limit of liability of $1,000,000. The D&O policy is a claims-made policy that provides coverage to Fieldston and its officers and directors, also insureds under the policy, for an array of "Wrongful Acts," a term broadly defined in the policy, as well as for losses relating to specified "offenses," a term defined to include, among other things, defamation, wrongful entry and eviction, provided the act or offense is committed during or before the policy period. Except to the extent that the "other insurance" clause may so provide, the D&O policy does not purport to be an excess policy. Federal also issued a "Commercial Umbrella Policy" (the umbrella policy), the particulars of which need not be detailed for the reason set forth below.

Hermitage communicated its position to Federal that only one of the eight causes of action, for injurious falsehood, in the first action might trigger its defense obligation. Although Federal did not dispute that its D&O policy provided coverage, Federal took the position that the D&O policy was excess to the Hermitage policy and refused for this reason to provide coverage for or contribute to the defense of the action. Consistent both with the settled principle that the duty to defend is broader than the duty to indemnify and with the obligation of an insurer to provide a defense whenever there is "a reasonable possibility of coverage" (*Fitzpatrick v American Honda Motor Co.*, 78 NY2d 61, 67 [1991]), even when some of the claims asserted against its insured "fall outside the policy's general coverage or within

its exclusory provisions" (*BP A.C. Corp. v One Beacon Ins. Group*, 8 NY3d 708, 714 [2007] [internal quotation marks omitted]), Hermitage undertook the defense of the action subject to a full reservation of rights. With respect to the second action, Hermitage took the position that only 1 of the 21 causes of action, for injurious falsehood, in the original complaint, and only 1 of the 17 causes of action in the first amended complaint, also for injurious falsehood, might trigger its defense obligation. Although Federal conceded that at least some of the causes of action fell within the coverage provided by the D&O policy, Federal again took the position that the D&O policy was excess to the Hermitage policy and refused to provide coverage for or contribute to the defense of the second action. Hermitage once again undertook the defense of the second action subject to a full reservation of rights.

The first action was dismissed as to all defendants prior to the commencement of the second action. After this Court upheld the dismissal of certain of the causes of action in the first amended complaint in the second action, including the claim for injurious falsehood (*Villanova Estates, Inc. v Fieldston Prop. Owners Assn., Inc.*, 23 AD3d 160 [2005]), Hermitage demanded that Federal assume the defense of the action and Federal complied.

Hermitage appeals from an order entered in each of the declaratory judgment actions relating to the respective obligations of the insurers in connection with the underlying actions. The first declaratory judgment action was brought by Fieldston against both insurers, and Supreme Court, by an order entered on August 10, 2006 (2006 NY Slip Op 30541[U]), granted Federal's motion for summary judgment dismissing the cross claims against it brought by Hermitage and denied Hermitage's cross motion for summary judgment seeking, among other things, a declaration that Federal is required to reimburse it, in whole or in part, for the defense costs it incurred in the first underlying action. In relevant part, Supreme Court concluded that Hermitage "was the primary insurer and Federal the excess insurer" with respect to that action because of the "other insurance" clause in Federal's D&O policy (*id.* at *10). The second declaratory judgment action was brought by Hermitage against Federal, and Supreme Court, by an order entered January 25, 2007 (2007 NY Slip Op 34405[U]), denied both Federal's motion for summary judgment dismissing the action and Hermitage's cross motion for summary judgment seeking, among other

things, a declaration that Federal is required to reimburse it in full for the defense costs it incurred in the second underlying action or, in the alternative, that Federal is required to contribute to those costs on an equitable basis. In relevant part, Supreme Court concluded that "neither party ha[d] demonstrated as a matter of law that the Federal policies are excess to the Hermitage policy" with respect to that action (*id.* at *8). In addition to the appeal by Hermitage, Federal cross-appeals from the January 25, 2007 order.

In its main brief, Federal maintains that "there is no real dispute that the causes of action asserted in both [underlying] actions fell within the coverages afforded to Fieldston under both the Hermitage CGL policy and the Federal D&O policy." Of course, however, Hermitage has maintained from the outset—and Federal does not contend otherwise—that at most only one cause of action in each of the underlying actions falls within its CGL policy. Moreover, as noted earlier, Federal does not dispute that at least some of the causes of action asserted in both underlying actions fall within the coverage afforded by its D&O policy. Indeed, although Federal made clear at all times that its position was that the D&O coverage is excess to Hermitage's CGL policy, by a letter dated December 10, 2001, Federal informed Fieldston with regard to the first underlying action that "[i]n the context of this matter, coverage will be afforded to Fieldston"; by a letter dated January 6, 2004, Federal informed Fieldston with regard to the second underlying action that "[i]n the light of the allegations of the . . . Complaint, we will provide coverage for Fieldston . . . for this matter." Accordingly, with the possible exception of the injurious falsehood claim asserted in both underlying actions, it is undisputed that the Hermitage CGL policy and the Federal D&O policy do not provide coverage for the same risks. Federal expressly so conceded in one of its submissions to Supreme Court. Finally, it also is undisputed that certain of the causes of action are based on alleged wrongful acts by the Fieldston parties that occurred after the policy period of the Hermitage CGL policy but during the period in which the Federal D&O policy was in effect.

Although the coverage provided by its D&O policy otherwise is primary and at least some of the causes of action asserted in the underlying actions otherwise would trigger its defense obligation, Federal contends that it is relieved of any obligation to defend because of the "other insurance" clause in the D&O

policy. This is so, Federal maintains, because the "other insurance" clause effectively renders it an excess insurer and Hermitage a primary insurer, which "has a duty to defend without any entitlement to contribution from an excess insurer" (*General Motors Acceptance Corp. v Nationwide Ins. Co.*, 4 NY3d 451, 456 [2005] [internal quotation marks omitted]). Accordingly, Federal's position entails the proposition that regardless of the number of claims asserted against one of its insureds that are covered under a policy providing primary coverage but containing such an "other insurance" clause, it is absolved of any obligation to defend its insured as long as the complaint in the underlying action includes even a single cause of action that falls within the coverage of another primary insurer's policy, regardless of whether it also falls within the Federal policy, and even though all the other causes of action fall outside the coverage of the other insurer's policy. Only if the single cause of action within the scope of the other insurer's policy is dismissed before the dismissal of all the other causes of action would Federal then be obligated to defend its insured.

Moreover, Federal thus would be absolved of its duty to defend regardless not only of the number of causes of action that fall within its policy but also of both the extent of the financial burden imposed on the other insurer in also defending these causes of action and of how unrelated the sole cause of action within the other insurer's policy is to all the other causes of action that are covered by Federal's policy. Federal defends this position in part on the basis of the obligation of the other insurer to provide a defense even when some of the causes of action asserted against its insured "fall outside the policy's general coverage or within its exclusory provisions" (*BP A.C.*, 8 NY3d at 714). Of course, the other insurer might well contend that because the law imposes the same obligation on Federal, at the very least Federal also must defend the insured and that requiring Federal to do so is particularly appropriate when the bulk of the claims against the insured fall within only the Federal policy. Federal, however, seeks to avoid the force of this contention by arguing that the "other insurance" clause of its policy requires the conclusion that the obligation to defend uncovered claims is not a reciprocal one that it shares.

The anomalies inherent in Federal's position might well be of no moment if they were compelled by the terms of the "other insurance" clause. They are not. The clause reads as follows:

> "If any Loss arising from any claim made against
> the Insured(s) is insured under any other valid poli-

cy(ies) prior or current, then This policy shall cover such Loss . . . only to the extent that the amount of such Loss is in excess of the amount of such other insurance whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written only as specific excess insurance over the limits provided in th[is] policy."

Contrary to Federal's contention, it is irrelevant that Hermitage's CGL policy is not "written only as specific excess insurance over the limits provided in the [D&O] policy." As Hermitage correctly argues, by its plain terms the "other insurance" clause applies only where a loss is insured under both the D&O policy and another "valid policy."[1] With the possible exception of the injurious falsehood claims, all the other losses (including defense costs) that could result from the other causes of action are not insured under the CGL policy but at least some of them are insured under the D&O policy. Accordingly, the "other insurance" clause is inapplicable to the risks of all other such losses, and the D&O policy thus provides primary coverage with respect to some of those risks. In other words, putting aside that possible exception, the CGL and D&O policies do not provide concurrent coverage as they do not insure against the same risks (*see Federal Ins. Co. v Empire Mut. Ins. Co.*, 181 AD2d 568, 569 [1992] ["The law is well settled that where different insurers provide coverage for the same interest and against the same risk, concurrent coverage exists"]; *cf. Consolidated Edison Co. of N.Y. v Allstate Ins. Co.*, 98 NY2d 208, 223 [2002] ["other insurance" clauses "apply when two or more policies provide coverage during the same period"]).[2]

Although Hermitage should prevail on these appeals if only one of the causes of action in the complaints in the underlying

---

**1.** To the extent Federal argues that the risks of loss relating to the causes of action that fall outside the scope of the CGL policy are "insured under" that policy because Hermitage is required to defend against them, that argument is meritless. The broad obligation to defend claims outside the scope of an insurer's coverage is an incident of the insurer's contractual obligation to provide a defense for other claims that are or may be within the policy (*see Fitzpatrick*, 78 NY2d at 68) and is a duty owed to the insured that is imposed for the benefit of the insured (*cf. General Motors Acceptance Corp.*, 4 NY3d at 456), not a coinsurer. Risks that an insurer must defend against on account of this broad duty are not thereby converted into risks that are covered by its policy.

**2.** As *Consolidated Edison Co.* makes clear, because the two policies do not provide coverage during the same period, they do not provide concurrent

actions other than the injurious falsehood claims is covered by the D&O policy and not by the CGL policy, as noted above Federal concedes that at least some of the other causes of action are covered by its D&O policy. Accordingly, Hermitage is entitled to contribution from Federal for Federal's equitable share of all the defense costs incurred by Hermitage, except for the costs Hermitage incurred in defending against the injurious falsehood claims if those claims are covered by both policies or are covered solely by the CGL policy (*see General Motors Acceptance Corp.*, 4 NY3d at 457 [where, pursuant to the "other insurance" clause in one insurer's policy it was excess to the other insurer's policy only as to the duty to indemnify, both insurers were "coincidental primary insurers" as to the duty to defend and each was required to contribute to the defense costs]; *cf. Atlantic Mut. Ins. Co. v Greater N.Y. Mut. Ins. Co.*, 241 AD2d 427, 427, 428 [1997], *lv dismissed* 91 NY2d 956 [1998] [where two insurers "insured a common obligation by providing successive coverage to their insured," the insurer that assumed the costs of defending the action was "entitled to recover from (the other insurer) its pro rata share of the defense costs"]).

Our decision in *Fireman's Fund Ins. Co. v Abax, Inc.* (12 AD3d 277 [2004]) provides compelling support for Hermitage's position. At issue in *Abax* was whether and the extent to which two insurers, Fireman's Fund and Zurich American, were responsible for defense costs and indemnity payments incurred in an underlying personal injury action against their mutual insured. We concluded that the "other insurance" clause in Fireman's policy did not apply to the claim against the insured so as to render Fireman's an excess insurer without any responsibility for the costs and payments. Although the terms of the "other insurance" clause are not set forth in our opinion, the record on appeal discloses that the terms of the clause are indistinguishable from the "other insurance" clause in Federal's D&O policy. Specifically, the clause provided that "[i]f there is other insurance *covering the same loss or damage under this policy* . . ., we will only pay for the amount of covered loss or damage in excess of the amount due from that other insurance" (emphasis added). The clause did not apply as it was included in the property section of the policy and the personal injury claim triggered coverage under other provisions of the policy. Accordingly, we

coverage for that additional reason. As noted above, moreover, Federal conceded that the two policies "are different policies designed to cover different risks."

held that the insurers "both provided primary coverage" and that as "coinsurers of the [insured] in the underlying personal injury action, [each] should share equally in the defense costs and indemnity payments" (*id.* at 278).

Persuasive additional support for Hermitage's position is provided by *NL Indus., Inc. v Commercial Union Ins. Co.* (935 F Supp 513 [D NJ 1996]). During a particular period of years, Commercial Union (CU) provided bodily injury coverage to the insured and Lloyd's provided property damage coverage (*id.* at 518). In the underlying "lead paint" actions, the insured defended against claims seeking to recover for both bodily injury and property damage. Construing New York law, the court rejected Lloyd's argument that because of an "other insurance" clause in its policies, its coverage was excess to CU's and thus it was not obligated to pay any portion of the defense costs for claims relating to the period in which both insurers' policies were in effect. Like the "other insurance" clause in the D&O policy, the " 'excess,' or 'other' insurance clause in Lloyd's policies provide[s] that coverage is secondary to coverage afforded by 'any other good, valid and collectible insurance inuring to the benefit of the Assured' " (*id.*). As the court observed, however, "Lloyd's 'excess' clause only applies 'with respect to loss or claims covered hereby.' Because [Lloyd's] policies cover only property damage, and CU's covers bodily injury exclusively, Lloyd's 'excess' clause is not triggered" (*id.*). In going on to conclude that CU could seek contribution from Lloyd's, the court reasoned as follows:

> "Th[e] difference between the duty to defend and the duty to indemnify requires that contribution for defense costs may be had even where the insurers in question do not provide coverage for the same risks. Indeed, it would be illogical, and inequitable, to deny CU its right to obtain contribution from Lloyd's where their respective duties to defend have been independently activated by different claims in the same underlying suits" (*id.*).

Although the lack of support for Federal's position in the terms of the "other insurance" clause is a sufficient basis for rejecting its position, other of its flaws should be noted. Acceptance of Federal's position would create an incentive for coinsurers like Hermitage in similar disputes to act inconsistently with their broad duty to defend the insured. After all, if Hermitage had refused to provide a defense rather than respect its obliga-

tion to provide a defense even though certain of the claims asserted against Fieldston fell outside the scope of its CGL policy, it is at least conceivable that Fieldston may have brought a declaratory judgment action against Federal alone, especially given that so many of the claims against it fall squarely within the scope of its D&O policy. In that event, Federal would have to seek contribution from Hermitage, rather than the other way around, and Hermitage would not in the meantime have incurred the costs of defending the underlying action. Moreover, to permit Federal to be a free rider here is particularly inappropriate given that it issued the D&O policy before the CGL policy was issued. Because Federal had no assurance that Fieldston would secure additional insurance that might overlap in coverage with the D&O policy, the premium Federal charged and accepted presumably reflected in part the potential costs of the broad duty to defend it had assumed under the policy.

Ironically, Federal seeks to use the broad duty to defend as a sword, wielding it not only against Hermitage but also using it to cut that same duty out of its policy, arguing that by defending the underlying actions Hermitage conceded that its CGL policy provided coverage. In undertaking to defend the actions, Hermitage conceded at most only a reasonable possibility of coverage for at least one cause of action in each of the underlying complaints. Actually, Hermitage conceded nothing, for it provided a defense in each underlying action under full reservations of its rights (*see National Rests. Mgt. v Executive Risk Indem.*, 304 AD2d 387 [2003]).

In support of its position, Federal understandably relies on our decision in *Firemen's Ins. Co. of Washington, D.C. v Federal Ins. Co.* (233 AD2d 193 [1996]). Both Firemen's and Federal issued policies to the defendant in an underlying action and certain allegations of the complaint were covered by Firemen's policy and others by a D&O policy issued by Federal. On the basis of an "other insurance" clause in the Federal policy, this Court held that Federal's policy was excess to Firemen's policy and thus that Firemen's was not entitled to contribution from Federal for the costs of defending the insured (*id.*). Although the terms of the "other insurance" clause are not set forth in the decision, Federal cites to the record on appeal and correctly points out that its terms are identical to those of the "other insurance" clause in this case.

Hermitage argues that *Firemen's* is distinguishable principally because, unlike this case, it did not "involve[ ] a situation where

many of the underlying acts and claims giving rise to the underlying suit occurred during times when one insurer's policy was in effect, and the other insurer's policy was not." The broad duty to defend, however, requires an insurer to defend claims that are not within the scope of the policy it issues when another claim or claims may be. In terms of that duty, Hermitage provides neither any precedent nor any reason that would support distinguishing between claims falling outside the scope of a policy's coverage that arise from acts or claims occurring during the policy's effective period, and claims falling outside the scope of a policy's coverage because they arise from acts or claims that occur before or after the policy's effective period. It is far from obvious why an insurer need not defend against the latter class of claims when it must defend against the former. In any event, we refuse to follow our decision in *Firemen's* as it is not supported by the plain language of the "other insurance" clause in that case, and follow instead our more recent decision in *Abax* (12 AD3d 277 [2004]) as it is in accordance with the plain language of the "other insurance" clause in this case, is consistent with *Consolidated Edison Co.* (98 NY2d 208 [2002]), which was decided after *Firemen's*, and resolves these disputes between insurers in a more sensible fashion.

Hermitage's argument on this appeal that it demonstrated as a matter of law that Fieldston was not entitled to coverage for the injurious falsehood claims is without merit. In its brief, Hermitage relies on allegations in Chapel Farm's complaints in each action that the false statements at issue were intentionally made, made with knowledge of their falsity and that the resulting damages were intended. As these allegations, if true, apparently would trigger exclusions in its CGL policy, Hermitage maintains that "given the[se] plain allegations of the [injurious falsehood causes of action], the Hermitage policy does not provide coverage for same." An insurer, however, cannot avoid its obligation to provide a defense by assuming the truth of allegations against its insured when it has actual knowledge of facts establishing a reasonable possibility of coverage (*Fitzpatrick*, 78 NY2d at 66-67, 69).

Finally, as noted above, Federal also issued an umbrella policy to Fieldston. Although Hermitage argued before Supreme Court and in its main brief that the terms of the umbrella policy provide an independent ground for the conclusion that it is entitled to contribution from Federal, it states in its reply brief that it withdraws its arguments concerning the umbrella policy

if this Court agrees it is entitled to contribution under the D&O policy. Because we hold that it is entitled to contribution under the D&O policy, we need not address or resolve those arguments.

For the reasons stated above, we reverse that portion of the order in the first declaratory judgment action granting Federal's motion for summary judgment dismissing Hermitage's cross claims and affirm that portion of the order in the second declaratory judgment action denying Federal's motion for summary judgment dismissing the action; and reverse those portions of the orders that denied Hermitage's cross motions for summary judgment and grant each motion to the extent of directing further proceedings to determine Federal's equitable share of the defense costs incurred by Hermitage (see Atlantic Mut., 241 AD2d at 427).

Accordingly, the order of Supreme Court, New York County (Herman Cahn, J.), entered August 10, 2006, which, in action no. 1, granted the motion of Federal Insurance Company, sued herein as Chubb Group of Insurance Companies (Federal), for summary judgment dismissing the amended cross claims against it, and denied the cross motion of Hermitage Insurance Company for summary judgment, should be reversed, on the law, with costs, the motion denied, the cross motion granted, and it is declared that Federal is obligated to reimburse Hermitage for Federal's equitable share of the reasonable costs incurred by Hermitage in defending the Chapel Farm Estates, Inc. action (except for the costs Hermitage incurred in defending against the injurious falsehood claims if those claims are covered by both policies or are covered solely by the CGL policy); and the order of the same court and Justice, entered January 25, 2007, which, in action no. 2, denied both Federal's motion and Hermitage's cross motion for summary judgment, should be modified, on the law, Hermitage's cross motion granted, and it is declared that Federal is obligated to reimburse Hermitage for Federal's equitable share of the reasonable costs incurred by Hermitage in defending the Chapel Farm action (except for the costs Hermitage incurred in defending against the injurious falsehood claims if those claims are covered by both policies or are covered solely by the CGL policy), and otherwise affirmed, with costs.

SAXE, J.P., SWEENY and ACOSTA, JJ., concur.

Order, Supreme Court, New York County, entered August 10, 2006, reversed, on the law, with costs, the motion by Federal for

summary judgment dismissing the amended cross claims denied, the cross motion by Hermitage for summary judgment granted, and it is declared that Federal is obligated to reimburse Hermitage for Federal's equitable share of the reasonable costs incurred by Hermitage in defending the Chapel Farm Estates, Inc. action (except for the costs Hermitage incurred in defending against the injurious falsehood claims if those claims are covered by both policies or are covered solely by the CGL policy). Order, same court, entered January 25, 2007, modified, on the law, Hermitage's cross motion for summary judgment granted, and it is declared that Federal is obligated to reimburse Hermitage for Federal's equitable share of the reasonable costs incurred by Hermitage in defending the Chapel Farm action (except for the costs Hermitage incurred in defending against the injurious falsehood claims if those claims are covered by both policies or are covered solely by the CGL policy), and otherwise affirmed, with costs.